COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Clements and Agee
Argued at Richmond, Virginia


PENNY ANGE

                                              OPINION BY
v.   Record No. 0925-01-1          JUDGE JEAN HARRISON CLEMENTS
                                           MARCH 12, 2002
YORK/POQUOSON DEPARTMENT OF
 SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF YORK COUNTY
                    Prentis Smiley, Jr., Judge

          Douglas J. Walter (McDermott & Roe, on
          brief), for appellant.

          Carla Blake Hook, Assistant County Attorney,
          for appellee.


     Penny Ange appeals from a decision of the Circuit Court of

York County (trial court) terminating her residual parental

rights to three of her minor children and approving a foster care

service plan of the York/Poquoson Department of Social Services

(DSS) providing for the placement of another of her minor

children in permanent foster care.  On appeal, Ange contends the

trial court abused its discretion by summarily disposing of her

appeals from the Juvenile and Domestic Relations District Court

of York County (juvenile court) without a hearing on the merits

for failure to comply with the trial court's pretrial orders.

For the reasons that follow, we conclude the trial court abused

its discretion and, therefore, reverse the judgment of the trial

court and remand this case for further proceedings.

                    I.  PROCEDURAL BACKGROUND

The record before us includes, in lieu of a transcript, a written statement of facts, made a part of the record pursuant to Rule 5A:8(c) and (d).

The procedural posture of this case is not in dispute. On September 12, 2000, the juvenile court approved DSS's foster care service plan identifying a goal of permanent foster care for Ange's daughter M.R. and ordered that M.R. be placed in permanent foster care. On September 25, 2000, the juvenile court ordered that Ange's residual parental rights to three of her other minor children, G.K., S.R., and L.R. (the children), be terminated. Ange timely noted her appeal of those orders to the trial court.

On appeal to the trial court, a pretrial conference for the four cases was set for November 14, 2000, to allow the trial judge to "get a feel of [the] time and direction needed for trial." At the pretrial conference, acting in its own discretion, the trial court ordered, pursuant to Rule 1:18, DSS to conduct a "Home Study" of Ange's home and a "Parental Evaluation" of Ange and DSS and Ange to "complete the 'Best Interest of the Child' Proffers pursuant to [Code § 20-124.3]." The court further ordered that the proffers were to be filed with the court by 8:00 a.m. on December 15, 2000, or "the presence of the parties [would] be required" on that date. These directives were memorialized in a pretrial scheduling order entered by the trial court, without objection, on December 13, 2000.[1]

DSS filed its "Best Interest of the Child Proffers" on December 14, 2000. Ange did not file her proffers by December 15, 2000, or appear in court on that date. However, a hearing

attended by Ange's counsel and counsel for DSS was held on that date, and the trial court extended the deadline for filing the proffers to January 5, 2001. No order regarding the January 5, 2001 deadline was entered, but the trial court subsequently entered an order extending the deadline for filing the proffers to January 16, 2001. That order, entered on January 3, 2001, read, in pertinent part, as follows:

> On the 15th day of December, 2000, came the York/Poquoson Department of Social Services by counsel and . . . counsel for Ms. Ange, to provide cause to the court as to why the "Best Interest of the Child Proffers" previously ordered to have been completed by Ms. Penny Ange had not yet been filed with the Court.
>
> Having reviewed the issues involved in the matter, the court does Order as follows:
>
> 1. That the Court Order from the Pretrial Conference on November 14, 2000, be served on Ms. Penny Ange.
>
> 2. That this Court Order be served on Ms. Penny Ange. . . .
>
> 3. That if Ms. Penny Ange does not comply with the provisions of the November 14, 2000, Court Order by January 16, 2001, at 8:00 a.m., this Court will dismiss Ms. Ange's Appeal.

The orders of December 13, 2000, and January 3, 2001, were personally served on Ange on January 6, 2001. Ange appeared in court with her counsel at 8:00 a.m. on January 16, 2001, and submitted her "Best Interest of the Child Proffers" to the trial court. Because the proffers for the four children were only "partially completed," the trial court granted a two-hour extension for filing Ange's "signed, notarized and completed"

---

[1] This order did not establish a trial date.

proffers.  Ange filed her completed and notarized proffers within the required time period.

At the January 16, 2001 hearing, the trial court also ordered Ange to "report to [DSS's] offices by noon on January 16, 2001, to begin the home study process, or her appeal [would] be dismissed."  The trial court further ordered Ange to "cooperate with [DSS] in completing the home study."[2]  These directives were memorialized in an order entered January 22, 2001.

By letter dated January 16, 2001, DSS informed the trial court that Ange had reported that day to its offices and had been given a "Home Study packet which [was] to be completed by January 30, 2001."  Ange had also been asked, according to DSS's letter, to inform DSS if her address changed and to make an appointment with DSS to discuss information pertaining to the "Home Study."

By letter dated February 12, 2001, DSS advised the trial court that Ange returned the "Home Study packet" on January 30, 2001, noting, however, that "it was only partially completed, as [Ange] did not complete the Autobiography or the authorization to release school information form."[3]  DSS also indicated in the letter that the information provided by Ange on the "Questionnaire" form in the packet was "so vague" it did not, in the opinion of the DSS social worker assigned to the case, "address[] the matter . . . before [the] Court."  DSS further

_____

[2] In making this directive, unlike the one requiring Ange to "report to [DSS's] offices by noon on January 16, 2001, to begin the home study process," the trial court did not designate a deadline or a sanction for noncompliance.

[3] The record fails to reveal whether the trial court had the referenced "Home Study packet" before it during these proceedings.  Regardless, it was not made a part of the record

reported that Ange failed to respond to two letters sent by DSS on February 1, 2001, and February 5, 2001, respectively, to Ange's last known address informing her of two appointments that had been made for her to meet with the social worker assigned to her case "to discuss the Home Study and schedule a home visit." According to DSS's letter to the trial court, Ange did not attend either meeting. DSS also set forth in the February 12, 2001 letter "Ange's Child Protective Services history," consisting of six "Founded dispositions" entered against Ange between 1993 and 2001 and the removal of her children from the home in February 1999. In concluding the letter, DSS wrote as follows:

> At this time, it does not appear as though this agency would be able to complete a Home Study on Ms. Ange, as she is not willing to meet with [the assigned social] worker. However, this agency has not been informed of a specific date in which this Home Study is to be completed. Currently, we are under the perception that Ms. Ange has an open time frame in which to comply. Please advise us in regards to your Honor's intent.

Upon receipt of DSS's letter of February 12, 2001, the trial court set a "further pretrial hearing" on the "matters raised in [DSS's] letter" for March 8, 2001. At that hearing, the trial court, referencing DSS's letter of February 12, 2001, found that Ange had "not substantially complied with any of" its pretrial orders concerning the preparation of the case for trial, in that she had not "proper[ly] complet[ed] . . . the Best Interests of the Child Proffers" or "full[y] cooperat[ed] in the performance of a Home Study and a Parental Evaluation."

Based on its determination that Ange had not complied with

_____

before us.

its pretrial orders, the trial court then proceeded, at the March 8, 2001 hearing, to sanction Ange for her noncompliance by summarily resolving the four cases involving Ange's children without benefit of a hearing on the merits.[4]  The court summarily found, "upon the evidence,"[5] that the children and M.R. were younger than fourteen years of age and not "otherwise of an age of discretion," that reasonable efforts had been made "to prevent removal from the home and to reunite the children and [M.R.] with Ange," that termination of Ange's residual parental rights was "in the children's best interests," and that placement in permanent foster care was in M.R.'s best interests.  The court further summarily found as follows:

> 6.  According to § 16.1-282(B) of the Virginia Code, based upon clear and convincing evidence, the neglect and/or abuse suffered by the children presents a serious and substantial threat to their life, health and/or development, and it is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the children's safe return to Ange within a reasonable period of time; and

> 7.  According to § 16.1-283(C) of the Virginia Code, based upon clear and convincing evidence, Ange has without good cause been unwilling or unable within a reasonable period of time not exceeding twelve (12) months from the date the children were placed in foster care to remedy substantially the conditions which led to or required continuation of the children's

---

[4] The record does not disclose whether the trial court imposed this sanction sua sponte or on DSS's motion.  Nor does the record identify the source of the court's authority to impose the sanction.

[5] Neither the written statement of facts nor the trial court's "Final Decree" identifies the evidence upon which the trial court relied to make its findings.

> foster care placements not withstanding the reasonable and appropriate efforts of social, medical, mental health and/or other rehabilitative agencies to such end; . . . .

Based on its factual findings, the trial court, with the concurrence of the guardian _ad_ _litem_ for Ange's children,[6] ordered that Ange's residual parental rights to the children be terminated and that DSS's foster care service plan with the goal of permanent foster care for M.R. be approved. On April 6, 2001, the trial court entered a "Final Decree" memorializing its findings and orders from the March 8, 2001 hearing.[7] This appeal followed.

---

[6] On appeal, the guardian _ad_ _litem_ did not file a brief or appear for argument on behalf of the children and M.R. in this case.

[7] The written statement of facts in the record indicates that the trial court "dismissed" Ange's appeals from the juvenile court and "affirmed" the juvenile court's orders at the March 8, 2001 hearing. However, in light of the trial court's findings of fact and orders set forth in the "Final Decree"—as recited hereinabove—and the absence of any language in that decree regarding dismissal of the subject cases or affirmance of the juvenile court's orders, we conclude that Ange's appeals were summarily adjudicated by the trial court without a hearing on the merits, rather than dismissed. _See_ _Waterfront Marine Constr., Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B and C_, 251 Va. 417, 427 n.2, 468 S.E.2d 894, 900 n.2 (1996) (holding that "a court speaks through its orders" and that, when a court's orders conflict with its statements made at a hearing or its letter opinions, "we presume that the orders accurately reflect what transpired") (citing _Stamper v. Commonwealth_, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979) (holding that, where an order conflicts with a transcript of a related proceeding, the order is presumed to be an accurate reflection of what transpired)); _see also_ _Anderson v. Commonwealth_, 13 Va. App. 506, 509, 413 S.E.2d 75, 77 (1992) (observing that, because transcripts and written statements of facts serve the same purpose on appeal, policies concerning them should be reasonably analogous).

                        II.  ANALYSIS

     Ange contends the trial court erred in sanctioning her for
noncompliance with its pretrial orders by summarily terminating
her residual parental rights to three of her children and
approving the placement in permanent foster care of another of
her children without a hearing on the merits.  The imposition of
such a severe sanction, Ange argues, was unwarranted under the
circumstances of this case and, thus, constituted an abuse of
discretion.[8]

     DSS contends the trial court did not abuse its discretion.
A trial court, DSS argues, has broad discretion in enforcing its
orders and determining the appropriate sanctions for
noncompliance with its orders.  In this case, DSS continues, the
trial court, "[a]fter five months of patient attempts to obtain
. . . Ange's compliance with its orders," acted within its
discretion in punishing Ange for her noncompliance with its
pretrial orders.  According to DSS, "Ange was not entitled to
disregard the orders of the [t]rial [c]ourt in preparing the case
for trial and still have a full hearing on the merits."

_____

     [8] Because Ange raises, on appeal, only the issue of whether
the trial court abused its discretion, "we limit our review to
that issue, and we do not express any opinion on other potential
issues." Dammerau v. Commonwealth, 3 Va. App. 285, 287, 349
S.E.2d 409, 410 (1986), overruled on other grounds by Vescuso v.
Commonwealth, 5 Va. App. 59, 69, 360 S.E.2d 547, 552 (1987) (en
banc).

There is no question the trial court had the authority to sanction Ange for noncompliance with its pretrial orders. "All litigants . . . are required to comply with court orders and their failure to do so subjects them to the sanction powers of the court." Parish v. Spaulding, 257 Va. 357, 363, 513 S.E.2d 391, 394 (1999). A court's ability to punish a litigant for noncompliance with its orders is "essential to the proper administration of the law, to enable courts to enforce their orders, judgments and decrees." Steinberg v. Steinberg, 21 Va. App. 42, 46, 461 S.E.2d 421, 423 (1995). "Courts often impose sanctions when a litigant . . . has acted in bad faith." Gentry v. Toyota Motor Corp., 252 Va. 30, 34, 471 S.E.2d 485, 488 (1996). Sanctions are also "used to protect courts against those who would abuse the judicial process." Oxenham v. Johnson, 241 Va. 281, 286, 402 S.E.2d 1, 3 (1991). "The purpose of such . . . sanction[s] is to punish the offending party and deter others from acting similarly." Gentry, 252 Va. at 34, 471 S.E.2d at 488.

"[A] court's decision of whether and how to enforce an order is reviewed only for an abuse of discretion." Parish v. Spaulding, 26 Va. App. 566, 576, 496 S.E.2d 91, 96 (1998), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999). Consequently, we will not reverse the trial court's decision in this case "unless the court abused its discretion" in summarily adjudicating Ange's appeals from the juvenile court without a hearing on the merits. Gentry, 252 Va. at 34, 471 S.E.2d at 488. We must be mindful, however, that, although we "accord deference to the decision of the trial court," we "should not simply rubber stamp every discretionary

decision of a trial court.  To the contrary, we have an obligation to review the record and, upon doing so, to reverse the judgment of the trial court if we find a clear abuse of discretion."  Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000).

Generally, "[t]he determination whether a trial court has abused its discretion is fact-specific."  Id.  However, in assessing the propriety of the imposition of a particular sanction, we may also take into account the context in which the sanction was imposed and any policy considerations that might be pertinent to the imposition of that sanction.  See, e.g., id. at 176, 530 S.E.2d at 907 (holding that, in addition to constituting an abuse of discretion on the facts of the case, the pretrial sanction imposed by the trial court was also inappropriate because it deprived plaintiff "of his day in court").

In support of its claim that the trial court based the sanction it imposed on "five months of noncompliant behavior by Ange," DSS asserts that Ange failed (1) to file her "Best Interest of the Child Proffers," or, alternatively, appear in court, by 8:00 a.m. on December 15, 2000, as directed by the trial court in its order entered December 13, 2000, (2) to file her notarized and completed proffers by 8:00 a.m. on January 16, 2001, as directed by the trial court in its order entered January 3, 2001, (3) to cooperate with DSS in completing the home study, as directed by the trial court in its order entered January 22, 2001, and (4) to cooperate with DSS in completing the parental evaluation, "after repeated orders of the [t]rial [c]ourt to do so."  While these acts are each referenced in the record and are

clearly not to be condoned if proved, we cannot say, upon a careful examination of the record, even considering the record in the light most favorable to DSS, that Ange acted in bad faith or abused the judicial process to the extent that DSS would have us believe.

The trial court issued its pretrial order of December 13, 2000, pursuant to Rule 1:18. It directed Ange and DSS to file "Best Interests of the Child Proffers" and DSS to conduct a home study and parental evaluation. The order's clear purpose was, in the language of Rule 1:18, to promote the "efficient and orderly administration of justice," or, in other words, to prepare the case in a timely fashion for trial. However, no trial date was set in that order.[9] Likewise, no deadline was established for the home study or parental evaluation. The only time-related directive in the court's initial pretrial order required Ange and DSS to file their proffers by 8:00 a.m. on December 15, 2000. DSS met the designated deadline, but Ange did not. Nor did Ange appear in court at that time.

However, following a hearing attended by Ange's counsel, the trial court extended the deadline for Ange to file her

---

[9] Indeed, no trial date was ever set in this case, despite Code § 16.1-296(E), which provides, in pertinent part:

> Where an appeal is taken in a case
> involving termination of parental rights
> brought under § 16.1-283, the circuit court
> shall hold a hearing on the merits of the
>
> case within ninety days of the perfecting of
> the appeal.

proffers.[10]  The court ordered Ange to file her proffers by 8:00 a.m. on January 16, 2001, and to report to DSS by noon on January 16, 2001, or her appeals from the juvenile court would be dismissed.  Ange submitted her proffers to the trial court at 8:00 a.m. on January 16, 2001.  Finding the proffers incomplete, the trial court gave Ange a short time extension within which to complete them.  Ange completed the proffers within the designated time limit, and the trial court accepted them as complete.  Ange then reported that day to DSS, where she received a home study packet.  According to DSS, Ange was to complete and return the packet by January 30, 2001.

In its order entered January 22, 2001, the trial court also directed Ange to "cooperate with [DSS] in completing the home study."  That order, however, did not establish a deadline for the home study or a consequence should Ange not comply.  Nor did it address the parental evaluation at all.  In a letter dated February 12, 2001, DSS informed the trial court that Ange had returned only a "partially completed" home study packet on January 30, 2001, had provided "vague" information on a questionnaire in the packet, and had not responded to two letters sent by DSS telling her about appointments that had been made for her to meet with DSS personnel.  As noted in DSS's letter, however, DSS was "under the perception that . . . Ange ha[d] an open time frame in which to comply" with the court's and DSS's directives because no deadline had been established for the home

_____

[10] Although the record does not disclose the court's reason for granting Ange that extension, we presume the court had a valid reason for doing so.

study and no trial date had been set.

It appears, from our review of the record, that Ange made some efforts to comply with the trial court's orders and that, when given an ultimate deadline and faced with a manifest consequence for noncompliance, she complied with the trial court's orders, or at least attempted to do so. We further observe, for purposes of our present analysis, that the trial court's order requiring Ange "to cooperate with [DSS] in completing the home study," without setting a deadline or establishing the extent of cooperation required to constitute compliance, put Ange, as well as DSS, in a position of not knowing what was expressly required of her and not knowing when it was required. Ange's return to DSS of even a partially completed home study packet on January 30, 2001, could reasonably be construed, on some level, as constituting "cooperation" in "completing the home study." "As a general rule, 'before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties thereby imposed upon him and the command must be expressed rather than implied.'" Winn v. Winn, 218 Va. 8, 10, 235 S.E.2d 307, 309 (1977) (quoting Wood v. Goodson, 485 S.W.2d 213, 217 (Ark. 1972)); see also Mardula v. Mendelson, 34 Va. App. 120, 128, 538 S.E.2d 338, 342 (2000) (noting that, "in instances where the order does not explicitly direct, mandate or prohibit specific conduct, it is insufficient to sustain a finding of contempt"). Furthermore, we find no order in the record directing Ange to cooperate with DSS in the completion of the parental evaluation.

We raise these matters not to absolve Ange of her

improprieties, or to suggest that courts give defiant or reluctant parties the benefit of the doubt before sanctioning their noncompliance or lead them by the hand through pretrial proceedings.[11]  We intend merely to distinguish this case from those cases in which a party's noncompliance and disobedience manifest a clear and total disregard for the court's authority. Plainly, that is not the case here.  Ange's noncompliance was not absolute.  Her lack of compliance was not a complete failure to comply with the trial court's pretrial orders.  This is not to say, however, that Ange's actions constitute "compliance" or that, under these circumstances, the trial court should not have imposed any sanctions on her.[12]  Rather, it is to say that some of the findings by the trial court upon which the imposition of the sanction in question was based—namely, that Ange had "not substantially complied with <u>any of</u>" its pretrial orders, in that she had not "<u>proper[ly] complet[ed]</u> . . . the Best Interests of the Child Proffers" or "<u>full[y] cooperat[ed]</u> in the performance of a Home Study <u>and a Parental Evaluation</u>" (emphasis added)—are not fully supported by the record, in that they are overstated or include requirements that were not part of the court's directives.

Moreover, given the context in which this issue arises, we find the extreme nature of the sanction imposed on Ange especially troublesome.  This case was before the trial court on

<hr>

[11] To rule thus would not only condone the type of behavior sanctions are intended to deter, it would also greatly dishonor those who properly and respectably comply with the orders of courts.

[12] Indeed, Ange herself concedes, on appeal, that some less severe sanction might have been appropriate.

Ange's appeal of the orders of the juvenile court terminating her residual parental rights to the children and ordering the placement of M.R. in permanent foster care. Finding that Ange had not complied with its pretrial orders concerning the preparation of the case for trial, the trial court sanctioned her for her noncompliance by summarily adjudicating her appeals from the juvenile court without a hearing on the merits. Thus, the court terminated Ange's residual parental rights to the children and approved the placement of M.R. in permanent foster care without allowing Ange to put on evidence at trial, rebut DSS's evidence, confront adverse witnesses, or present any argument in defense of DSS's foster care service plan and petition for the termination of her residual parental rights. In other words, the court's sanction did not let Ange's appeals go forward and, thus, deprived her of her day in court on the merits of the case. Such drastic measures that summarily terminate the legal process are generally not favored and are to be avoided when possible. See Walsh, 260 Va. at 176, 530 S.E.2d at 907 (noting that the Supreme Court has "often warned of the dangers of 'short circuiting' litigation because in doing so, a trial court 'deprives a litigant of his day in court and deprives [the appellate courts] of an opportunity to review a [more] thoroughly developed record on appeal.'" (quoting Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship, 253 Va. 93, 95, 480 S.E.2d 471, 472 (1997))); see also Brown v. Black, 260 Va. 305, 316, 534 S.E.2d 727, 732 (2000) (Kinser, J., concurring) (noting that imposition of the "most severe sanction" requires inquiry as to whether the "trial court could have furthered the [applicable]

goals . . . through less drastic measures").

Furthermore, while it was Ange's appeals that brought this case before the trial court, it was DSS's case to prove. As we stated in <u>Fairfax County Dep't of Family Servs. v. D.N.</u>, 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999) (citations omitted):

> [A]n appeal from the juvenile court must be heard <u>de novo</u> by the circuit court. Code § 16.1-136. "'A <u>de novo</u> hearing means a <u>trial anew</u>, with the burden of proof remaining upon the party with whom it rested in the juvenile court.'" A trial <u>de novo</u> in the circuit court "annuls the judgment of the [juvenile court] as completely as if there had been no previous trial . . . and . . . grants to a litigant every advantage which would have been [available to the litigant] had the case been tried originally in [the circuit] court." "'A court which hears a case <u>de novo</u>, which disregards the judgment of the court below, which hears evidence anew and new evidence, and which makes final disposition of the case, acts not as a court of appeals but as one exercising original jurisdiction.'"

Thus, the burden in this case was on DSS to prove by clear and convincing evidence that termination of Ange's residual parental rights was in the best interests of the children and that the other requisite provisions of Code § 16.1-283(B) or 16.1-283(C) had been met. With regards to M.R., DSS had the burden of proving that the requisite provisions of Code § 16.1-282.1 had been satisfied and that placement in permanent foster care was in her best interests. In preventing this case from going to trial, the trial court precluded DSS from presenting the full extent of its evidence in support of its petition for termination of Ange's residual parental rights to the children and its foster care service plan for M.R. The legal process, as well as the trial court's important appellate role in

that process, was thus short-circuited.  While the question of whether DSS ultimately met its burden of proof is not before us, we note with some skepticism that the trial court, relying, apparently, exclusively on the parties' "Best Interest of the Child" proffers,[13] found that DSS had proved its case.[14]

We are also mindful, in a case of this type, that, "[w]hen addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Servs., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  "It is clearly not in the best interests of a

---

[13] DSS argues that the trial court also had the recommendations of the guardian ad litem and Ange's Child Protective Services history before it for consideration in making its findings.  Notwithstanding the fact that neither of those items was ever received into evidence by the trial court, the record is devoid of any indication that the guardian ad litem presented testimony, a report, or recommendations to the trial court, other than that he concurred in the court's ultimate rulings in the case.  Likewise, the record does not show that Ange's Child Protective Services history, which was related to the trial court in DSS's letter of February 12, 2001, was presented to the court under oath.

[14] Because Ange did not challenge the propriety of this finding or the trial court's apparent reliance solely on the parties' written proffers in terminating Ange's residual parental rights, we do not address the issue further, except to note that the "Best Interest of the Child" proffers submitted by the parties were clearly intended to assist the trial court and parties prepare for a trial de novo on the merits, not to serve as the entire evidentiary basis for the court's findings and orders in this case.

child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

On the other hand, "'the rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'"  Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (quoting Malpass v. Morgan, 213 Va. 393, 400, 192 S.E.2d 794, 799 (1972)).  "The termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes 'a legal stranger to the child.'"  Lowe v. Dep't of Pub. Welfare of City of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986) (quoting Shank v. Dep't of Soc. Servs., 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)).  Therefore, in reviewing such cases, we must have a

> respect for the natural bond between children and their natural parents.  The preservation of the family, and in particular the parent-child relationship between parent and child, is an important goal for not only the parents but also government itself. . . . Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship.

Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980).

Thus, while the paramount concern is the best interests of Ange's children, Ange's rights must also be protected. Certainly, the efficient resolution of this case is in the

children's best interest, but so, too, is the preservation of the children's relationship with their mother, if that is found to be warranted. As plainly shown in the record, the trial court did not base the imposition of its sanction in this case on the best interests of Ange's children. Rather, it was imposed strictly to punish Ange for failing to comply with the court's pretrial orders.

Thus, given the nature of this case, the severity of the sanction imposed, Ange's partial compliance with the trial court's orders, and the need to protect Ange's rights, we conclude that, in summarily disposing of Ange's appeals from the juvenile court without a hearing on the merits based on Ange's noncompliance with the trial court's pretrial orders, the trial court clearly abused its discretion. Less drastic sanctions would have served the same purpose of punishing Ange for her

noncompliance, without short-circuiting these significant legal proceedings.

Accordingly, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

Agee, J., concurring.

I agree with the majority that the decision of the trial court to summarily terminate Ange's residual parental rights to three of her four children and to place the fourth child in permanent foster care was erroneous and requires reversal. While I concur in the majority's decision to reverse and remand, I do not agree with describing the trial court's decision to proceed summarily as "a sanction" imposed against Ange for an alleged failure to comply with its orders.

A sanction is a discretionary measure employed by a trial court to coerce a party to comply with a discovery order or to punish a party for abusing the judicial system. See, e.g., Code § 8.01-271.1 (trial court shall impose an appropriate sanction against a party and/or counsel whose pleading, motion or other paper is signed or made without being "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); Rule 4:12 (trial court has broad discretion to sanction a party for failing to comply with discovery orders). Ange never argued that the trial court proceeded summarily as a sanction. The record before us does not indicate that the decision to proceed summarily was rendered as a form of sanction in the ordinary sense of our jurisprudence, a measure used "to protect [the trial court] against those who would abuse the judicial

process."  Oxenham v. Johnson, 241 Va. 281, 286, 402 S.E.2d 1, 3 (1991).

I do not conclude from the facts before us in the record that the trial court elected to proceed summarily to either punish Ange or to coerce her into complying with its orders.  The facts reflect the trial court simply erred procedurally, believing it could rule on the DSS petitions summarily, and not as a sanction against Ange.