COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


CHARLES BERNARD CUSTALOW
                                                      OPINION BY
v.        Record No. 2303-02-2              JUDGE ROBERT J. HUMPHREYS
                                                      MAY 18, 2004
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
                            Thomas B. Hoover, Judge

          Robert H. Smallenberg for appellant.

          Donald E. Jeffrey, III, Assistant Attorney General (Jerry W.
          Kilgore, Attorney General; Stephen R. McCullough, Assistant
          Attorney General, on brief), for appellee.


        Charles Bernard Custalow appeals his conviction for trespassing in violation of Code

§ 18.2-119.  Appellant contends that the Mattaponi Indian Tribe improperly barred him from its

reservation.  Thus, the Commonwealth failed to prove appellant was forbidden to "go[] upon or

remain upon" the reservation by the "person lawfully in charge thereof."  See Code § 18.2-119.

For the reasons that follow, we affirm his conviction.

                                  I.  Background

        On appeal, we review the evidence and all reasonable inferences in the light most

favorable to the Commonwealth as the party prevailing below.  Juares v. Commonwealth, 26

Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  That principle requires us to discard the

evidence of the defendant in conflict with the Commonwealth's evidence and regard as true all

evidence favorable to the Commonwealth.  See Watkins v. Commonwealth, 26 Va. App. 335,

348, 494 S.E.2d 859, 866 (1998).[1] So viewed, the record shows that appellant trespassed upon the Mattaponi Indian Reservation on February 23, 2002 after having been forbidden to do so.[2]

At trial, the Commonwealth presented one witness, Mark Custalow, a member of the tribal council of the Mattaponi Indian tribe, who testified he saw appellant on the reservation on February 23, 2002. He further testified that, after a tribal council meeting on November 3, 2000, the council voted to expel appellant from the reservation for a period of two years. The council subsequently extended the expulsion by one year because appellant violated the tribal council's ruling. Mark Custalow testified that the matter was also voted upon at a tribal meeting. He stated that the tribal meeting was a regular meeting of the tribe and that "somewhere in the neighborhood of less than one-half of tribal members show up at the regular meetings."

The written statement of facts asserts that the trial court

> took judicial notice that in a previous circuit court civil case an appeal of the Tribal Council's decision to bar [appellant] from the reservation was dismissed on jurisdictional grounds and, therefore, the council's decision stood. The trial court noted that the prior matter had collateral estoppel effect upon the issue of whether [appellant] was barred from the reservation. [Appellant] argued that a civil matter cannot have collateral estoppel effect upon a criminal matter due to, among other things, the differing standards of proof. The court overruled this argument and noted [appellant's] exception.

Appellant subsequently argued that he could not be convicted "unless there was . . . a vote of a majority of the members of the tribe voting [in] favor of such a barring."[3] "The trial court rejected this defense and [appellant] noted his exception."

---

[1] In lieu of a transcript, appellant has submitted a written statement of facts pursuant to Rule 5A:8(c).

[2] Appellant does not dispute that he was barred from the reservation in 2000, or that he was present on the reservation on February 23, 2002, in violation of the expulsion.

[3] The written statement of facts does not reflect that appellant submitted legal authority for this proposition.

The trial court subsequently convicted appellant of trespassing and sentenced him to serve six months in jail and to pay a $1,000 fine. The trial court suspended the jail term in its entirety and suspended $800 of the $1,000 fine.

## II. Analysis

On appeal, appellant contends that "the trial court err[ed] in finding [him] guilty of trespassing upon the Mattaponi Indian Reservation [because] there was evidence that the tribal council did not follow the proper procedure in barring [him] from the reservation[.]" Appellant further claims that the trial court erred in finding that the "dismissal of [the] prior civil appeal of [his] barring from the reservation on jurisdictional grounds had collateral estoppel [sic] in the instant proceeding."

Before reaching the merits of appellant's arguments, we note two troubling inconsistencies in the appellant's written statement of facts. First, the record reflects that the original written statement of facts, which was initially filed in this appeal, did not contain the paragraph quoted above concerning the trial court "not[ing]" the "collateral estoppel effect" of appellant's expulsion and subsequent appeal. However, because the trial court failed to sign the original written statement of facts, we remanded the matter for appropriate action pursuant to Rules 5A:8(c)(2) or 5A:8(d). The written statement of facts that was subsequently filed was signed by the trial court and contained this additional paragraph. Nevertheless, the trial court's handwritten notes on the "Misdemeanor/Traffic Order" for the trial of July 24, 2002, reflect only that the court took "judicial notice" that appellant had "notice" of the expulsion, due to the previous "court case." The trial court's notes make no mention of the words "collateral estoppel" or "collateral attack."

Second, although both written statements of fact reflect that appellant noted his exceptions to the challenged rulings, the trial court's handwritten notes do not reflect such

"exceptions." In fact, the trial court's notes specifically state that its conclusion that Custalow was "properly excluded from [the] reservation" "came in without objection."

Despite the above, because the trial court's handwritten notes concerning the trial proceedings do not take the form of an order, and because the final, typewritten "Misdemeanor Trial Order" makes no reference to these matters, we assume without here deciding, that the written statement of facts does not conflict with the trial court's order and that appellant properly preserved his appeal.[4]

Turning to the merits of appellant's arguments, we first note that Code § 18.2-119 provides in relevant part:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, by the owner, lessee, custodian or other person lawfully in charge thereof . . . he shall be guilty of a Class 1 misdemeanor.

Appellant argues insufficient evidence existed to establish that those "lawfully in charge" of the reservation forbade him from going on the reservation. Specifically, appellant claims the tribal council did not follow the proper procedure in barring him. In support of his argument, appellant cites to the Acts of the Assembly, 1896 Va. Acts ch. 843, which states:

> 1. Be it enacted by the general assembly of Virginia, That an act entitled an act to appoint trustees for the Mattaponi tribe of Indians of King William county, and to prescribe their duties as such trustees, approved March eight, eighteen hundred and ninety-four, be amended and re-enacted so as to read as follows:
>
> § 1. Be it enacted by the general assembly of Virginia, That Doctor B. Richards, R.C. Hill, senior, L.D. Robinson, J.S.

---

[4] See Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979) (holding that, where an order conflicts with a transcript of a related proceeding, the order is presumed to be an accurate reflection of what transpired); see also Anderson v. Commonwealth, 13 Va. App. 506, 509, 413 S.E.2d 75, 77 (1992) (observing that, because transcripts and written statements of fact serve the same purpose on appeal, policies concerning them should be reasonably analogous); Ange v. York/Poquoson Dep't of Soc. Servs., 37 Va. App. 615, 623 n.7, 560 S.E.2d 474, 478 n.7 (2002).

Robinson and W.T. Neale be, and they are hereby, appointed trustees for the Mattaponi Indian tribe, in King William county, Virginia, formerly known as a branch of the Pamunkey Indian tribe. Said trustees shall be governed by the laws now in force in regard to Indians and their reservations in this state; and, further, shall have the right upon the vote of the majority of the trustees, and also a majority of the members of the tribe above twenty-one years of age, to expel from their reservation, any person who has no right upon said reservation, or any member of the tribe who shall be guilty of any lawful offense: provided that any person expelled from said reservation shall have the right of appeal to the county court of King William from the decision of the trustees and the members of the tribe.

2. This act shall be in force from its passage.

Based upon this legislation, appellant contends that the *only* manner in which he could have been barred from the Mattaponi reservation was pursuant to a "vote of the majority of the trustees), and also a majority of the members of the tribe above twenty-one years of age." Id. Because evidence in the record established that, after the tribal council voted to bar appellant from the reservation, they finalized his expulsion after a tribal meeting, and because Mark Custalow testified that "somewhere in the neighborhood of less than one-half of the tribal members show up at the regular meetings," appellant claims that the Commonwealth failed to prove that he was barred from the reservation upon a vote of "a majority of the members of the tribe above twenty-one years of age." We disagree.

The Indian Treaty of 1677, between the King of England, acting through the Lieutenant Governor of Virginia, and the Indian tribes constituting what is generally referred to by historians as the Powhatan Confederacy including what is now known as the Mattaponi Indian Tribe, specifically provided, in relevant part, that:

II. . . . [T]he said Indian Kings & Queens and their Subjects shall hold their lands, and have the same confirmed to them and their posterity by Patent under the Seale of this his Majesties Colony, without any fee gratuity or Reward for ye same, in such sort, and in as free and firme manner as other his Majesties Liege Subjects, have and enjoye their Lands, and possessions . . . .

- 5 -

III.  That all Indians who are in amity with us, & have not land siffitient to plant up, be upon information forthwith provided for, and laid out, and confirmed to them as affores'd never to be disturbed therein, or taken from them, soe long as they owne keep and maintaine the due obedience & Subjection to his Majestie his Govern'r and Government; & amity & friendship towards the English.

Treaty Between Virginia and the Indians (1677).

Pursuant to the Treaty, the Commonwealth has recognized that although it maintains a fee simple interest in the reservation, that interest is "subject to the exclusive use and occupancy of the [tribe] possessing Indian title to the land." 2001 Va. Att'y Gen. 36. Nevertheless, over the hundreds of years since the signing of the Treaty, the legislature has "frequently appointed trustees to lease the surplus lands of the[] tribe[] and empowered the trustees to prosecute actions against persons trespassing thereon." 1917 Va. Att'y Gen. 160. It was exactly for that purpose that 1894 Va. Acts ch. 845, and its amended version, 1896 Va. Acts ch. 843, was enacted. Id.; see also 1917 Va. Att'y Gen. 161 (recognizing that the trustees were appointed to provide "protection and assistance" to the Tribe "in carrying out their by-laws and in governing their tribe and reservation," including prosecuting actions at law (or "in tort") against trespassers (quoting 1894 Va. Acts ch. 845)). Appellant points to no authority for his supposition that the Acts were intended to provide the sole method by which the Mattaponi could expel or forbid an individual from "coming upon the reservation," nor do we find any such authority. Cf. Mattaponi Indian Tribe v. Commonwealth, 261 Va. 366, 378, 541 S.E.2d 920, 926 (2001) (recognizing that the Mattaponi Tribe "possesses[,] in its own right[,] justiciable interests").[5]

_____

[5] The dissent asserts the Commonwealth failed to prove "those 'lawfully in charge' of the reservation forbade Custalow from 'going upon' their land because it presented no evidence that a majority of the tribal members over twenty-one years of age voted to expel him as required by 1896 Va. Acts ch. 843 (the Act)." This, of course, presupposes that the Mattaponi Tribe and its elected leaders have no "lawful" authority or control over their own tribal lands. We disagree with this supposition. Moreover, as implicitly noted in Mattaponi Indian Tribe, the 19th century paternalistic approach toward the Commonwealth's Native American citizens, as embodied in

- 6 -

Accordingly, because the evidence before the trial court established, without dispute, that the Tribal Council[6] at a regular tribal meeting voted to bar Custalow from the reservation, and, because the Supreme Court of Virginia has specifically recognized that the Tribal Council is the "governmental body" of the sovereign Mattaponi Tribe, we find the evidence was sufficient to establish that Custalow was forbidden from entering the reservation by those "lawfully in charge thereof." Id.; see also Report of the Joint Subcommittee Studying Relationships Between the Commonwealth and Native Indian Tribes to the Governor and the General Assembly of Virginia, House Document No. 10, at 4 (1983) (recognizing that the treaty between the Commonwealth and the Mattaponi included provisions for possession of tribal reservations and "the right of internal tribal government").

We likewise disagree with appellant's claim that the trial court improperly attributed "collateral estoppel" effect to the King William County Circuit Court's dismissal of his appeal of the expulsion. Indeed, the written statement of facts indicates only that the "trial court noted that the prior matter had collateral estoppel effect upon the issue of whether defendant was barred

---

the Act, has evidently and appropriately evolved into a relationship that recognizes that they have justiciable interests in their own right. 261 Va. at 378, 541 S.E.2d at 926.

[6] The dissent states that "[b]oth parties treat the terms, 'tribal council' and 'tribal trustees,' synonymously. There is no contention that the Commonwealth failed to prove that the trustees acted properly; the issue on appeal is whether it proved that a majority of the tribal members over the age of twenty-one voted to expel as required by the Act." In asserting legal insufficiency of the evidence, the appellant makes no such concession. Furthermore, the 1897 Act specifically named "Doctor B. Richards, R.C. Hill, senior, L.D. Robinson, J.S. Robinson and W.T. Neale" as trustees and provided no mechanism for their replacement upon resignation or death, nor does it appear that any subsequent statute provided such a mechanism or directly appointed new trustees. Therefore, the logic of the dissent would necessarily dictate that the exclusive "lawful authority" to bar individuals from the Mattaponi reservation is a majority of those individuals named over a century ago, together with a majority of the tribal membership over twenty-one.

from the reservation." This language comports with the trial court's handwritten notes, indicating that it considered the prior adjudication only as evidence of "notice" to Custalow that he had been barred from the reservation. It does not establish, as Custalow contends, that the trial court considered that adjudication as preclusive with regard to whether Custalow was barred from the reservation by someone "lawfully in charge thereof." Indeed, the written statement of facts proves that the trial court took evidence, from Mark Custalow, on that very issue - evidence which appellant did not dispute - and found that appellant was "properly excluded from [the] reservation." We find no error in that determination and we, thus, affirm appellant's conviction.

Affirmed.

Annunziata, J., dissenting.

I respectfully dissent because I would find that the Commonwealth failed to establish that Charles Custalow (Charles) was expelled from the reservation by those "lawfully in charge" as required by the criminal trespass statute, Code § 18.2-119.

It is well established that the Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

Here, the Commonwealth failed to prove beyond a reasonable doubt all the elements of the criminal trespass statute. Specifically, the Commonwealth failed to prove that those "lawfully in charge" of the reservation forbade Charles from "going upon" their land because it presented no evidence that a majority of the tribal members over twenty-one years of age voted to expel him as required by 1896 Va. Acts ch. 843 (the Act). The Act states that the trustees of the tribe:

> shall have the right upon the vote of the majority of the trustees, and also a majority of the members of the tribe above twenty-one years of age, to expel from their reservation, any person who has no right upon said reservation, or any member of the tribe who shall be guilty of any lawful offense[.]

1896 Va. Acts ch. 843. Contrary to the Commonwealth's contention, the Act does not establish "two ways to bar an individual from the reservation."[7] A plain reading reveals that the terms, "majority of the trustees" and "majority of the members of the tribe over twenty-one years of

---

[7] In its brief, the Commonwealth argued that "the plain reading of [1896 Va. Acts ch. 843] demonstrates that there are two ways to bar an individual from the reservation: (1) the vote of the majority of the trustees 'and also' (2) a majority of the members of the tribe who are above the age of 21." It concluded that, because the record established that "a majority of the trustees voted to bar the defendant," the Commonwealth did not have to prove that a majority of tribal members over the age of twenty-one voted to expel Charles.

age," are stated in the conjunctive; in other words, both conditions must be satisfied for a proper expulsion. A "plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

Here, the Commonwealth failed to establish that a majority of the tribal members over twenty-one years of age voted to expel Charles. Mark Custalow (Mark), the Commonwealth's main witness, testified that Charles was expelled by vote of the "tribal council."[8] He further testified that the tribal council voted at a tribal meeting and that "somewhere in the neighborhood of less than one-half of the tribal members show up at the regular meetings." The meeting which resulted in Charles's expulsion was described as a "regular meeting." In order to find compliance with the Act, the trial court would have had to infer that, although fewer than a majority of the members were present, a majority of those over twenty-one years of age, in fact, were present and voted to expel Charles. Although we grant all reasonable inferences to the Commonwealth, the inference must be a "logical deduction or conclusion from established fact." United States v. Grow, 394 F.2d 182, 199 (4th Cir. 1968). Neither Mark's testimony establishing that the "tribal council" voted to expel Charles or his testimony that "somewhere in the neighborhood of less than one-half of the tribal members" were present at the meeting permit the reasonable inference that a majority of tribal members over the age of twenty-one voted to expel Charles.

The only evidence that persons "lawfully in charge" of the reservation expelled Charles is Mark's testimony that the "tribal council," the entity which voted to expel Charles, "determines

---

[8] Both parties treat the terms, "tribal council" and "tribal trustees," synonymously. There is no contention that the Commonwealth failed to prove that the trustees acted properly; the issue on appeal is whether it proved that a majority of the tribal members over the age of twenty-one voted to expel as required by the Act.

. . . who can be barred from the reservation." His statement is patently inconsistent with the voting requirements set forth by the Act and his testimony regarding a matter of law is not binding on this Court. See Jones v. Commonwealth, 42 Va. App. 142, 147, 590 S.E.2d 572, 574-75 (2004) (*en banc*).

The majority affirms Charles's conviction for trespassing, not on the ground that the Commonwealth's proof established he was expelled from the reservation by the vote mandated by the Act, but rather on the ground that Charles failed to prove that the Act prescribes the exclusive means of expulsion from the Mattaponi Indian Tribe's reservation. Neither the Commonwealth nor the majority points to any authority in support of the proposition that the Act does not establish the only valid procedure for expelling a member from the reservation. Indeed, the Commonwealth did not raise such an argument at trial or on appeal. Rather, its arguments were, and continue to be, confined to whether its proof of the authority to expel met the requirements of the Act, i.e. that the tribal council, acting alone, had the authority to expel and that, in the alternative, the evidence established that a majority of tribal members over the age of twenty-one voted to expel Charles from the reservation.

In summary, I would find that the Commonwealth failed to prove all elements of the crime of trespass, as defined by Code § 18.2-119, because it presented no evidence that those "lawfully in charge" of the reservation, as defined by the Act, voted to expel Charles. Accordingly, I would reverse the decision of the trial court.