COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales, AtLee, Malveaux, Athey, Ortiz, Causey, Friedman,
           Chaney, Raphael, Lorish, Callins, White and Bernhard
Argued at Richmond, Virginia


ROBERT THORNHILL

v.        Record No. 0635-23-4

COMMONWEALTH EYE CENTER, P.C., ET AL.

OPINION BY
JUDGE DOMINIQUE A. CALLINS
FEBRUARY 17, 2026

UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

E. Kyle McNew (D. Cory Bilton; MichieHamlett PLLC, on briefs),
for appellant.

Paul T. Walkinshaw (M. Logan Blake; Kristina L. Fattoum; Byron J.
Mitchell; Wharton Levin; Mitchell & Simopoulos, PLLC, on brief),
for appellees.


Robert Thornhill appeals the circuit court's entry of summary judgment in favor of

Commonwealth Eye Center and D. Russell Brear, M.D. (collectively, CEC) on Thornhill's claim

for medical malpractice.  On appeal, Thornhill argues the circuit court (1) misinterpreted the

Uniform Pretrial Scheduling Order, (2) abused its discretion in prohibiting him from introducing

evidence at trial, and (3) erred in entering summary judgment as a result.  A divided panel of this

Court disagreed with Thornhill and affirmed the circuit court's judgment, holding the circuit

court did not abuse its discretion in its interpretation of the Uniform Pretrial Scheduling Order.

*Thornhill v. Commonwealth Eye Ctr., P.C.*, No. 0635-23-4 (Va. Ct. App. May 13, 2025).  Upon

Thornhill's petition for rehearing en banc, we reverse the circuit court's judgment and remand

for further proceedings.

BACKGROUND[1]

Thornhill sued CEC for medical malpractice based on Brear's performance of an

intraocular lens surgery.[2]  The circuit court entered a Uniform Pretrial Scheduling Order (UPSO)

and set trial for four days beginning on March 20, 2023.  Section V of the UPSO set deadlines

for the exchange and filing of witness and exhibit lists, providing:

> Counsel of record shall exchange fifteen (15) days before trial a
> list specifically identifying each exhibit to be introduced at trial,
> copies of any exhibits not previously supplied in discovery, and a
> list of witnesses proposed to be introduced at trial.  The list of
> exhibits and witnesses shall be filed with the Clerk of the Court
> simultaneously therewith but the exhibits shall not then be filed.
> Any exhibit or witness not so identified and filed will not be
> received in evidence, except in rebuttal or for impeachment or
> unless the admission of such exhibit or testimony of the witness
> would cause no surprise or prejudice to the opposing party and the
> failure to list the exhibit or witness was through inadvertence.

Based on this provision, the parties' witness and exhibit lists were due for exchange and filing by

March 6.[3]

Five days before trial, the circuit court judge assigned to hear the case contacted the

parties directly about their exhibit and witness lists.  The judge noted that CEC timely filed its

exhibit and witness list, but that Thornhill failed to so file.  The judge proceeded to suggest a

course of action to the parties based on Thornhill's failure:

---

[1] On appeal from a circuit court's entry of summary judgment, we apply "the same standard a trial court must adopt . . . accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fauber v. Town of Cape Charles*, 79 Va. App. 660, 673 (2024) (quoting *Stahl v. Stitt*, 301 Va. 1, 8 (2022)).

[2] Thornhill originally sued CEC in April 2019, but he nonsuited that action in April 2021. He reinstituted the action in October 2021.

[3] Fifteen days prior to March 20 fell on March 5, a Sunday.  Thus, under Code § 1-210(B), the deadline fell on "the next day that [wa]s not a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office [wa]s closed," or Monday, March 6.

Since [Thornhill] has chosen not to list any witnesses or exhibits, I wish to ascertain whether [CEC] expects to make any objections about the issue. I would *urge* both counsel to read the *exact language* of the order. I want to avoid the disruption and inconvenience to the jury panel that will occur if this matter surfaces on the morning of trial with no prior notice to the court. I am not going to keep citizens waiting to resolve this issue. The Virginia Supreme [C]ourt promulgated the detailed rule concerning pre-trial scheduling orders to bring stability and certainty to trials. I would *urge* counsel to review Reaves v. Tucker, 67 Va. App. 719, 736 (2017) and Rahnema v. Rahnema, 47 Va. App. 645, 658 (2006). There is also a recently unpublished case by the Virginia Court of Appeals that addresses the issue. Marag v. Samsudin, 2022 Va. App. LEXIS 550.

(Emphases added). In response, Thornhill confirmed with the judge that he exchanged his lists with CEC on March 1 but that his lists were "inadvertently not sent to the court." He promptly filed the lists the next day.

Even so, CEC read the circuit court's tea leaves and responded to the judge's inquiry with a courtesy copy of its "Objection to [Thornhill's] Witness and Exhibit Lists and Motion for Summary Judgment." CEC argued Thornhill could not be permitted to introduce any evidence at trial since he failed to file a witness or exhibit list. Since Thornhill could not meet his burden of proof without presenting evidence, CEC argued it was entitled to summary judgment. Thornhill responded that CEC possessed his witness and exhibit lists prior to the deadline and that "[a]ny claim by [CEC] of surprise or prejudice [wa]s not made in good faith." He distinguished his case from those cited by the judge and argued his inadvertent failure to file the lists and the lack of prejudice or surprise to CEC merited invocation of the exception to the prescribed sanction.

After a hearing, the circuit court sustained CEC's objection, prohibited Thornhill from introducing exhibits or witnesses at trial, and entered summary judgment. The circuit court recognized that CEC was "not surprised by the late filing because they received the same in advance of the deadline." Nonetheless the court interpreted the exception to Section V as only

permitting safe harbor from a failure to comply with its strictures if the party timely filed a witness and exhibit list in the first place:

> In this case, the court finds that the [UPSO] requires the parties to file the witness and exhibit list while simultaneously providing a copy to opposing counsel. The "safe harbor" provisions providing potential relief omit the word "filed" from the order. The court is bound by the plain meaning of the order and cannot add or subtract language from it. The court further notes the absence of the word "filed" in the safe harbor provisions of the order. The order demands filing the exhibit and witness list simultaneously.

The court justified this construction by relying on policy considerations, like (1) the presumption of public access to judicial records, (2) the court's need to check for conflicts-of-interest, and (3) the need to enforce scheduling orders as a matter of deterrence. As a result, the circuit court determined Thornhill was not entitled to the exception and entered its final order dismissing Thornhill's action.

Thornhill appealed, and a divided panel of this Court affirmed the circuit court's judgment. *Thornhill*, slip op. at 1-2. The panel majority reasoned the Court reviews the circuit court's interpretation of the UPSO for an abuse of discretion since it is "simply interpreting its own order." *Id.* at 7. From there, the majority held the circuit court reasonably interpreted the exception to the deadline as only applying to the "omission of specific witnesses or exhibits from a timely filed list of all the proposed witnesses and exhibits." *Id.* at 11. The majority then applied the language of the order to hold that "[s]ince the circuit court had not received any timely filed list . . . the circuit court did not abuse its discretion when barring Thornhill from presenting any evidence." *Id.* at 14. Because Thornhill could not meet his burden of proof on his claim, the majority then held that the circuit court did not err in entering summary judgment. *Id.* at 16.

The dissent agreed with the principle that summary judgment may be appropriately entered in the absence of any evidence from the claimant but disagreed about the standard of

- 4 -

review applicable to the interpretation of the UPSO and the appropriateness of the sanctions issued by the circuit court. *Id.* at 19 (Callins, J., dissenting). The dissent opined that the Court should review the interpretation of the UPSO de novo since it is an extension of Rule 1:18. *Id.* at 20. In any event, the dissent reasoned, the circuit court erred under either a de novo or abuse of discretion standard, since (1) Thornhill's conduct clearly met the requirements of the exception, and (2) the circuit court's sanctions were disproportionate to the offending conduct violative of the UPSO. *Id.* at 21-22, 24.

Thornhill petitioned for en banc review, which we granted. *Thornhill v. Commonwealth Eye Ctr., P.C.*, No. 0635-23-4 (Va. Ct. App. June 10, 2025) (order).

ANALYSIS

Thornhill argues that the circuit court erred in its enforcement of the UPSO by prohibiting him from introducing witnesses and exhibits, all but guaranteeing the dismissal of his case with prejudice on the contemporaneously-considered motion for summary judgment. We agree.

We review the circuit court's enforcement of the UPSO and its imposition of sanctions for an abuse of discretion. *See Reaves v. Tucker*, 67 Va. App. 719, 736-37 (2017) (applying abuse of discretion standard to enforcement of the UPSO). A circuit court abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, . . . commits a clear error of judgment." *Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). Otherwise, we review the circuit court's entry of summary judgment de novo. *Kosmann v. Brown*, 81 Va. App. 322, 332 (2024).

- 5 -

The UPSO is a creature of Rule 1:18, promulgated under our Supreme Court's authority to "formulate rules of practice and procedure for the circuit courts." Code § 17.1-503(A). Rule 1:18 is "subject to the strict construction of the provisions of § 8.01-4." *Id.* By reference, Code § 8.01-4 limits the promulgation of rules governing practice and procedure in circuit courts to those "rules necessary to promote proper order and decorum and the efficient and safe use of courthouse facilities and clerks' offices." These docket-management rules must not have the "effect of *abridging substantive rights* of persons before" the circuit court, and "[a]ny rule of court which violates" this proscription is "invalid." Code § 8.01-4 (emphasis added). Dismissing a litigant's cause of action based solely on procedural violations inherently abridges their substantive rights by denying them even the opportunity to furnish proof in support of their cause of action. *Cf. Montgomery v. Commonwealth*, 75 Va. App. 182, 206-07 (2022) (Lorish, J., dissenting) ("[O]ur precedent demonstrates that . . . [substantive rights] relate to causes of action, rights of recovery, contracts, real property interests, and the nature of what is criminal."). Thus, neither the Rules themselves nor any enforcement of the same should have the effect of denying a litigant the opportunity to establish their case based solely on procedural violations in the absence of *compelling* justification.

A circuit court's authority to enforce an order like the UPSO must be authorized by court rule, statute, or at common law. At common law, a circuit court may impose contempt sanctions for a willful violation of the UPSO. Contempt is appropriate when a litigant disobeys or resists "any lawful process, judgment, decree or order of the court." *Epperly v. Cnty. of Montgomery*, 46 Va. App. 546, 552 (2005) (quoting Code § 18.2-456(5)). Sanctions for contempt for "misconduct tangentially related to the underlying suit" must be "narrowly tailored to correct" the contemptuous conduct at issue. *Winters v. Winters*, 73 Va. App. 581, 593 (2021). Put simply, sanctions must be "sufficient to deter [the offending] practices." *Id.* (alteration in

- 6 -

original).  As such, we have held the dismissal of an action to be an abuse of discretion where a litigant irrevocably disclosed the sealed contents of a psychological evaluation to a third-party. *Id.*  And we have similarly held summary disposition of an action to be an abuse of discretion even though a litigant had "not substantially complied with" any of the circuit court's pretrial scheduling orders, given the substantive rights involved.  *Ange v. York/Poquoson Dep't of Soc. Servs.*, 37 Va. App. 615, 621 (2002).  Dismissal, as a sanction, is "generally not favored" and is to be "avoided when possible."  *Id.* at 629.

Assuming without deciding that the circuit court's interpretation of the UPSO's language was correct and that Thornhill violated the terms of the order,[4] we conclude the imposed sanction—that is, exclusion of all Thornhill's witnesses and exhibits—was not merited.[5]  The UPSO specifies that exhibits or witnesses "not so identified *and* filed will not be received in evidence."  (Emphasis added).  Subsequently, the safe harbor provision of Section V of the UPSO makes plain that exclusion of evidence does not apply when the opposing party suffers no surprise or prejudice and the failure to list is inadvertent.  By finding that CEC was "not surprised by the late filing" and that Thornhill's failure was "inadvertent," the circuit court's judgment misaligns with the reality of the circumstances it confronted.  *Cf. Herbert v. Joubert*,

---

[4] Indeed, Thornhill acknowledges his failure to comply with the filing requirement of Section V.

[5] Thornhill also argues the circuit court erred by effectively assigning primacy-of-place to the filing requirement contained within Section V of the UPSO and adducing it, alone, as grounds for the exclusion of Thornhill's evidence.  Because we hold the circuit court abused its discretion by imposing the sanctions that it did, we do not address the separate issue of the court's interpretation of the UPSO.  We do so because our Supreme Court has previously exhorted that "a degree of judicial caution should accompany any holding that reaches out beyond the limits of the particular case to address unnecessary and novel issues."  *Butcher v. Commonwealth*, 298 Va. 392, 397 (2020).  Indeed, "a ruling on the factual sufficiency of a single case will affect far fewer subsequent cases than a broad pronouncement on an open legal question."  *Id.*  We are obligated to decide cases on the best and narrowest grounds as matter of judicial restraint, we decline to issue a "broad pronouncement" on the interpretation of Section V's language, affecting cases across the Commonwealth.  *Id.* at 396-97.

83 Va. App. 592, 614-15 (2025) (holding a circuit court abused its discretion by making an error of law under an erroneous understanding of the facts).

The circuit court's sanctions, which contradict its own factual findings and the plain language of the UPSO, are further undermined by its consideration of improper factors. The court spent much time explaining why "the filing of the exhibit and witness list is important." But its offered policy considerations do little to parry the General Assembly's expressed intention that docket control procedures[6] "not abridge the substantive rights of the parties." Code § 8.01-4. Permitting a circuit court to wield its power in a manner that obliterates a litigant's case based solely on a procedural technicality is anathema to the General Assembly's intention. And virtuous as the circuit court's policy considerations may have been, they were irrelevant and improper factors to consider, unmoored from the text of Section V. *See Lawlor*, 285 Va. at 213 (noting circuit courts abuse discretion when giving significant weight to "irrelevant or improper factor[s]" (quoting *Landrum*, 282 Va. at 352)).

In fact, the circuit court failed to give the proper weight to the factors prescribed by the UPSO. We agree with the circuit court that the UPSO "requires the parties to file the witness and exhibit list while simultaneously providing a copy to opposing counsel." The UPSO clearly and unambiguously imposes two conditions precedent on the exclusion of witnesses and exhibits. Exclusion is only appropriate when witnesses and exhibits are not (1) identified on a list that is (2) filed with the circuit court. According to the plain language of Section V, exhibits and witnesses are "identified" when they are included on a list exchanged between counsel at least 15 days before trial. A litigant satisfies the filing requirement by filing this list with the

---

[6] The UPSO is multi-functional. In the context of its provisions relating to expert designation deadlines, our Supreme Court has characterized it as an "order regulating discovery." *Galloway v. Cnty. of Northampton*, 299 Va. 558, 564 (2021) (quoting *Mikhaylov v. Sales*, 291 Va. 349, 358 (2016)). Here we consider the UPSO's provisions regulating post-discovery trial preparations, a matter of docket control and management.

clerk of the circuit court simultaneously with its exchange between counsel. And as noted by the circuit court, application of the safe harbor provision turns on consideration of whether the admission of evidence not included on such a list would cause "no surprise or prejudice to the opposing party" and whether "the failure to list" was "through inadvertence." But here, the circuit court effectively gave no weight at all to Thornhill's timely identification of his witnesses and exhibits, the lack of surprise or prejudice to opposing counsel, or to the inadvertence of Thornhill's failure to simultaneously file the document with the clerk of the circuit court. Failing to give proper weight to the factors prescribed by the UPSO's language compounds the errors caused by the circuit court's abuse of discretion. *See Lawlor*, 285 Va. at 213 (recognizing an abuse of discretion exists "when a relevant factor that should have been given significant weight is not considered" (quoting *Landrum*, 282 Va. at 352)).

Setting aside the considerations driving the circuit court's imposition of sanctions, it committed a clear error of judgment by imposing a sanction disproportionate to Thornhill's offending conduct. By "short-circuiting" Thornhill's case, the circuit court imposed the civil "death penalty" based on a minor violation of the UPSO. *See Ange*, 37 Va. App. at 629, 632. It did so despite recognizing that Thornhill had timely identified his witnesses and exhibits with CEC and that Thornhill's failure to file was merely inadvertent. Crucially, by the circuit court's *own findings*, the safe harbor provision should have prevented the exclusion of Thornhill's evidence. *Cf. Galloway v. Cnty. of Northampton*, 299 Va. 558, 564 (2021). Basing its sanction instead on irrelevant factors and ignoring the proper ones, the circuit court's disproportionate action in dismissing Thornhill's case was also not sufficiently narrowly tailored to be justified as a contempt sanction. *See Winters*, 73 Va. App. at 593.

We are mindful that by holding that the circuit court abused its discretion we are recognizing the significant and rare circumstance where no reasonable jurist could agree that the

circuit court's actions were appropriate. *See Commonwealth v. Holland*, 304 Va. 34, 47 (2025) (admonishing the Court of Appeals for its prior misapplications of the abuse of discretion standard). We do not do so lightly. But this case features an egregious abuse of judicial power, wherein the court abandoned the neutrality of its role to *choose* the outcome in this case, regardless of the facts or law. In an era where public trust in the judiciary is already reaching its lowest ebb, we cannot abide "rubber stamp[ing] every discretionary decision" of the circuit courts. *Walsh v. Bennett*, 260 Va. 171, 175 (2000). Hence, we hold the circuit court abused its discretion.

By holding the circuit court abused its discretion in imposing sanctions in this case, we necessarily hold that it erred in entering summary judgment. It entered summary judgment as a matter of Thornhill's inability to meet his burden of proof because of the circuit court's sanctions. Absent the exclusion of Thornhill's evidence, however, genuine disputes of material fact remain as to the sufficiency of Thornhill's evidence to meet his burden of proof. Rule 3:20 ("Summary judgment may not be entered if any material fact is genuinely in dispute.").

CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

Raphael, J., with whom Ortiz, Causey, Chaney and Lorish, JJ., join, concurring in the judgment.

Should appellate courts defer to circuit judges' differing interpretations of the provisions in the uniform pretrial scheduling order prescribed by Rule 1:18, or should those provisions be interpreted uniformly throughout the Commonwealth? The question practically answers itself. The uniform order should be interpreted uniformly throughout Virginia; its meaning should not vary from one judicial circuit to another, let alone from one circuit judge to another.

The majority assumes without deciding that an abuse-of-discretion standard applies when reviewing the trial court's interpretation of the uniform pretrial scheduling order. While I agree that the trial court erred, I would hold that the trial court's interpretation of the provisions of the uniform pretrial scheduling order presents a question of law subject to de novo review. I write separately to explain why.

In 1999, citing caselaw from other jurisdictions, we held that "courts have the authority to interpret their own orders" and that "when construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court." *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 129 (1999) (en banc). The Supreme Court adopted that rule a year later. *See Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 143-44 (2000). Our appellate courts have repeated that rule many times since. *E.g.*, *Hill v. Commonwealth*, 301 Va. 222, 226 n.1 (2022) ("We defer to the court's interpretation of its own order."); *English v. Quinn*, 76 Va. App. 80, 92 (2022) ("It is well-established that courts have the authority to interpret their own orders."). The obvious rationale is that the trial judge who authored the order is in the best position to understand what was intended. Deference is required, however, only if the trial court's interpretation of its own order is "reasonable." *See, e.g.*, *Roe v. Commonwealth*, 271 Va. 453, 458 (2006); *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019).

- 11 -

But as the parties acknowledged at oral argument, no published decision by our appellate courts addresses whether that interpretive rule applies when interpreting provisions of the uniform pretrial scheduling order prescribed by Rule 1:18. The panel opinion concluded that deferential review should apply based on four cases. *See Thornhill v. Commonwealth Eye Ctr., P.C.*, No. 0635-23-4, slip op. at 7-8, 2025 Va. App. LEXIS 272, at *11 (May 13, 2025) (citing *Galloway v. Cnty. of Northampton*, 299 Va. 558, 564 (2021); *Mikhaylov v. Sales*, 291 Va. 349, 358-59 (2016); *Reaves v. Tucker*, 67 Va. App. 719, 736 (2017); and *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006)). But none of those cases held that appellate courts should defer to the trial court's interpretation of the provisions of the uniform order itself. *See*, *e.g.*, *Galloway*, 299 Va. at 564-65 (affirming exclusion of expert whose expected testimony was not properly disclosed under the uniform pretrial scheduling order); *Reaves*, 67 Va. App. at 734 ("The trial court did not err in enforcing the deadlines in the scheduling order, thereby keeping the litigation on track.").

The deferential standard for reviewing a trial court's interpretations of its "own orders," *Fredericksburg Constr.*, 260 Va. at 144; *Rusty's Welding*, 29 Va. App. at 129, does not apply here because the uniform pretrial scheduling order is not the trial court's *own* order. It was authored instead by our Supreme Court. And Rule 1:18 of the Supreme Court of Virginia obligates a circuit court to issue that order "upon request of counsel of record for any party, or in its own discretion." Rule 1:18(b). Circuit courts may adopt different scheduling orders in civil cases like this one only if the parties consent or if the court determines after notice and hearing that the uniform provisions are inadequate:

> With the exception of domestic relations and eminent domain cases, a court may not enter a scheduling order which deviates from the terms of the Uniform Pretrial Scheduling Order unless either (1) counsel of record for all parties agree to different provisions, or (2) the court, after providing an opportunity for counsel of record to be heard, makes a finding that the scheduling

order contained in the Appendix is not consistent with the efficient and orderly administration of justice under the specific circumstances of that case.

Rule 1:18(c).

The history of the uniform pretrial scheduling order confirms that its provisions should be interpreted eponymously, that is, *uniformly* across the Commonwealth. Before Rule 1:18 prescribed a uniform pretrial scheduling order, some "200 local scheduling orders" had proliferated throughout Virginia.[7] In 1999, the General Assembly amended Code § 8.01-4 to limit the power of circuit courts to enact local rules that could abridge substantive rights. 1999 Va. Acts ch. 839. Section 2, which was uncodified, said it is "the clear intent of the General Assembly that there be no local rules and that any docket control procedures not affect the substantive rights of the litigants." *Id.* In 2000, the General Assembly amended the statute again to make clear that no local rule could be inconsistent with "the Rules of the Supreme Court." 2000 Va. Acts ch. 803. The bill also added what is now the first sentence of the second paragraph of Code § 8.01-4: "The courts may prescribe certain docket control procedures which shall not abridge the substantive rights of the parties nor deprive any party the opportunity to present its position as to the merits . . . solely due to the unfamiliarity of counsel of record with any such docket control procedures." *Id.* On May 1, 2000, shortly after the General Assembly approved the 2000 legislation, the Supreme Court promulgated Rule 1:18, effective July 1, the same day that the bill took effect. *See* Order (Va. May 1, 2000); Rule 1:18 (Supp. Nov. 2000).

---

[7] Deborah Elkins, *Uniform Pretrial Order Proposed For All Courts*, Va. Lawyers Weekly (Dec. 20, 1999), https://valawyersweekly.com/1999/12/20/uniform-pretrial-order-proposed-for-all-courts/. The development of Rule 1:18 to counter that trend was chronicled by the Virginia Lawyers Weekly, which also published the draft rule for public comment. *See id.*; *Proposed Uniform Scheduling Order*, Va. Lawyers Weekly (Jan. 7, 2000), https://valawyersweekly.com/2000/01/17/proposed-uniform-scheduling-order/; Deborah Elkins, *Scheduling Order Approved By Court*, Va. Lawyers Weekly (May 22, 2000), https://valawyersweekly.com/2000/05/22/scheduling-order-approved-by-court/.

If the provisions of the uniform pretrial scheduling order were not interpreted uniformly across the Commonwealth, Virginia civil procedure would revert to the very situation that the General Assembly condemned: different rules or "docket control procedures" among different circuit courts that could "abridge the substantive rights of the parties" and deny a "party the opportunity to present its position as to the merits . . . solely due to the unfamiliarity of counsel of record with any such docket control procedures." Code § 8.01-4. Worse yet, those rules could differ not only among Virginia's 31 judicial circuits, but among its 175 circuit judges.[8]

Because the uniform pretrial scheduling order is set forth as an appendix to Rule 1:18, the order is an extension of the rules of court themselves. So like disputes over the meaning of the rules of court, a dispute about how to interpret a provision in the uniform pretrial scheduling order presents a question of law subject to de novo review on appeal. *See, e.g., Commonwealth v. Carolino*, 303 Va. 399, 409 (2024) (holding that the Supreme Court reviews our construction of the rules of court de novo).

This case shows the importance of giving uniform meaning to the uniform order's provisions. Section V of the uniform pretrial scheduling order requires the parties to exchange and file witness and exhibit lists 15 days before trial. As relevant here:

> Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or *unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence*.

---

[8] *See RD82—Annual Report on the Number of Circuit Court Judges Needed and the Districts for which They Should Be Authorized* 3 (Jan. 10, 2025) (listing authorized judges per circuit), https://rga.lis.virginia.gov/Published/2025/RD82.

- 14 -

Uniform Pretrial Scheduling Order § V (emphasis added).[9]  The majority calls the italicized *unless* clause in this sentence the "safe harbor provision."

The trial court came up with a plausible reading of the safe-harbor provision: the *unless* clause applies only if the witness and exhibit lists are *both* exchanged and filed; that is, only a party who has complied with the "identified and filed" requirement is entitled to the safe-harbor provision by showing that the other side was not prejudiced by the "failure to list" a witness or exhibit.

I would hold that the trial court's reading of the safe-harbor provision, though not unreasonable, is simply not the better reading once we eliminate any deference that we would otherwise give the trial judge had he authored the order himself.  The better reading of "not so identified and filed" is that the safe-harbor provision applies to any witness or exhibit that is (1) not disclosed on the list served by counsel and (2) not on the list, if any, filed with the court.[10]  The trial court's construction, by contrast, leads to a counterintuitive result.  It requires that all the plaintiff's evidence be excluded despite that the plaintiff's failure to file the lists was

---

[9] The trial court used the pre-2021 version of the uniform pretrial scheduling order.  The uniform order was among the rules and appendices comprehensively revised by the Supreme Court, effective March 1, 2021, "replacing or eliminating more than 1,800 *shalls*."  *Bland Henderson v. Commonwealth*, 77 Va. App. 250, 260-61 (2023), *aff'd on other grounds*, 303 Va. 211 (2024).  The revisions were intended "to clarify the meaning of the word 'shall' formerly appearing in these Rules and not to change existing law."  Order at 1 (Va. Nov. 23, 2020), https://perma.cc/DT54-JGX6; *see Bland Henderson*, 77 Va. App. at 261 n.8 (discussing purpose of *shall* replacements).

[10] This interpretation does not undermine the value of the filing requirement in § V.  For one thing, the filing requirement serves principally to corroborate that the party in fact exchanged the witness and exhibit lists on the date claimed; the filing "simultaneously therewith" confirms that the exchange among parties in fact occurred.  But there is no dispute here that the lists were exchanged; indeed, they were exchanged early.  For another thing, a party who has timely served its witness and exhibit lists on opposing counsel—but who intentionally or recklessly failed to file the lists with the court—would not have acted "inadvertently," and thus would not be entitled to the benefit of the safe harbor.

inadvertent and the defendant—having received the lists early—suffered no prejudice whatsoever.

If we had to defer to the trial judge's plausible interpretation of § V as if it were the trial judge's *own order*, we would have to affirm the trial court's discretion to enter summary judgment against one side based on a trivial procedural misstep. Worse, doing so would tolerate different interpretations of the uniform pretrial scheduling order throughout Virginia depending on the trial judge's preferred reading. That would subject counsel "unfamiliar[]" with the trial judge's peculiar "docket control procedures" to the loss of "substantive rights." Code § 8.01-4. Deference to the trial court in this context makes no sense. *Cf. In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014) ("Litigants as well as third parties must be able to rely on the clear meaning of court orders setting out their substantive rights and obligations, and appellate courts should interpret those orders in the same manner.").

In sum, while I agree with the majority that the trial court erred in striking the plaintiff's evidence, I would hold that the trial court erred as a matter of law when interpreting the safe-harbor provision in § V of the uniform pretrial scheduling order. The plaintiff's failure to file the lists that had been timely served on opposing counsel did not negate the plaintiff's entitlement to the safe-harbor provision. And because the parties agree that the plaintiff's failure to file the lists with the court was inadvertent and did not prejudice the defendant, it was error to exclude the plaintiff's evidence and enter summary judgment. For these reasons, I respectfully concur in the judgment.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **10th** *day of* **June, 2025**.

Robert Thornhill, Appellant,

 against       Record No. 0635-23-4
                Circuit Court No. CL21001338-00

Commonwealth Eye Center, P.C., et al., Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On May 27, 2025, the appellant, by counsel, filed a petition requesting that the Court set aside the judgment rendered on May 13, 2025, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

        *original order signed by a deputy clerk of the*
By:    *Court of Appeals of Virginia at the direction*
        *of the Court*

Deputy Clerk

Present: Judges Beales, Athey and Callins
Argued at Arlington, Virginia


ROBERT THORNHILL

                                  MEMORANDUM OPINION[*] BY
v.        Record No. 0635-23-4                 CLIFFORD L. ATHEY, JR.
                                           MAY 13, 2025

COMMONWEALTH EYE CENTER, P.C., ET AL.


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

E. Kyle McNew (D. Cory Bilton; MichieHamlette PLLC, on briefs),
for appellant.

Paul T. Walkinshaw (Kathleen S. Ryland; Kristina L. Fattoum;
Byron J. Mitchell; Wharton Levin; Mitchell & Simopoulos, PLLC,
on brief), for appellees.


Robert Thornhill ("Thornhill") sued Commonwealth Eye Center, P.C. and Dr. D. Russell

Brear (collectively "Commonwealth Eye"), alleging that Commonwealth Eye committed medical

malpractice when it failed to meet the applicable standard of care when treating Thornhill's eye

condition. Without objection, the Circuit Court of Culpeper County (the "circuit court")

subsequently entered a scheduling order requiring the parties to identify and file their list of

exhibits and witnesses with the circuit court on or before 15 days prior to trial. Although

Thornhill timely mailed his proposed list of exhibits and witnesses to Commonwealth Eye, he

failed to timely file his proposed list of exhibits and witnesses with the circuit court. Based upon

Thornhill's failure to comply with the scheduling order, Commonwealth Eye objected *in limine*

to Thornhill being permitted to call any witnesses on his behalf during his case in chief or to

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

introduce any exhibits in evidence. Commonwealth Eye also moved for summary judgment conditioned upon successfully prevailing upon its objections to Thornhill's proposed witnesses and exhibits. Following a hearing on Commonwealth Eye's objections to all of Thornhill's proposed witnesses and exhibits, the circuit court held that Thornhill's failure to timely file the exhibit and witness list with the court was in violation of the scheduling order. The circuit court further held that the untimely filing did not fall within any of the exceptions to compliance enunciated in section V of the scheduling order. As a result, the circuit court barred Thornhill from presenting any evidence either through testimony or by the introduction of exhibits during his case in chief. The circuit court then proceeded to hear argument on Commonwealth Eye's motion for summary judgment. The circuit court concluded that since Thornhill was prohibited from introducing any evidence during his case in chief, summary judgment was appropriate and granted the motion for summary judgment ending the case. Thornhill appealed from the entry of summary judgment. Finding no abuse of discretion, we affirm the circuit court's grant of summary judgment.

## I. BACKGROUND

In October of 2021, Thornhill filed a medical malpractice suit against Commonwealth Eye, alleging that Dr. Brear breached the standard of care of an eye surgeon thereby directly and proximately causing injury to Thornhill's vision. Commonwealth Eye filed their answer in November of 2021, denying the allegations and simultaneously demurring to Thornhill's request for attorney fees. In December of 2021, the parties entered a consent order, stating that discovery conducted by the parties in a previously nonsuited case involving the same allegations "is adopted and incorporated into this action." Commonwealth Eye's demurrer as to attorney fees was also sustained without objection. In August of 2022, Commonwealth Eye filed a motion to compel discovery, alleging that Thornhill's discovery responses were more than 10

weeks overdue, and on September 27, 2022, the circuit court granted Commonwealth Eye's motion to compel discovery responses without objection.

On December 13, 2022, the parties jointly executed a scheduling order, which the circuit court entered at their request, and the case was set for a four-day jury trial commencing on March 20, 2023. The scheduling order, in section "V. Exhibit and Witness List," provided that all exhibits sought to be entered in evidence at trial were to be identified and filed with the court at the same time the proposed exhibits were sent to opposing counsel not later than 15 days before trial.[1] Section XII of the scheduling order, "Waiver or Modification of Terms of Order," further provided that "[u]pon motion, the time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown."

On February 10, 2023, Commonwealth Eye filed a motion *in limine* requesting that the circuit court strike any request for "lost income" because Thornhill did not request lost income in his complaint. Commonwealth Eye also moved the court to sanction Thornhill for failing to provide full and complete discovery responses pursuant to the terms in the scheduling order. Following a hearing, by order dated March 10, 2023, the circuit court granted the motion *in limine*, holding that Thornhill would "not be permitted to introduce evidence regarding lost income at trial."

---

[1] The exact text of the relevant portion of the order states:

> Counsel of record shall exchange fifteen (15) days before trial a list specifically identifying each exhibit to be introduced at trial, copies of any exhibits not previously supplied in discovery, and a list of witnesses proposed to be introduced at trial. The lists of exhibits and witnesses shall be filed with the Clerk of the Court simultaneously therewith but the exhibits shall not then be filed. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence.

Five days before the scheduled jury trial was set to commence on Monday, March 20, 2023, the circuit court emailed counsel for both parties advising them that while Commonwealth Eye had timely filed their exhibit and witness list with the circuit court on March 6, 2023, the court "did not see where [Thornhill] has filed any exhibit/witness list."[2] Later that afternoon, Commonwealth Eye filed "Defendants' Objections to Plaintiff's List of Witnesses and Exhibits," objecting to the introduction of specific exhibits from Thornhill's list of exhibits. After Commonwealth Eye filed this objection, Thornhill advised the circuit court by email that although he had timely mailed his exhibit and witness list to Commonwealth Eye on March 1, 2023, he had "inadvertently" failed to timely file the pleadings with the circuit court. Thornhill also indicated that the original witness and exhibits lists would be shipped overnight to the circuit court. At 3:15 p.m., Commonwealth Eye filed "Defendants' Objection to Plaintiff's Witness and Exhibit Lists and Motion for Summary Judgment," seeking to exclude any witnesses or exhibits Thornhill proposed in his case in chief because Thornhill had violated the scheduling order when failing to timely file with the circuit court his witness and exhibit lists while "provid[ing] no explanation to establish good cause for the Court to amend the Order and allow a late filing."

The following day at 4:51 a.m., Thornhill emailed the circuit court his brief in opposition to Commonwealth Eye's objection to the plaintiff's witness and exhibits list and motion for summary judgment. Later that morning, the parties participated in a virtual hearing before the circuit court on Commonwealth Eye's objections to the exhibit and witness lists as well as their related motion for summary judgment. At the hearing, Commonwealth Eye contended that Thornhill had failed to comply with the deadline for filing his exhibit and witness lists in the

---

[2] Thornhill confirmed that he had "no qualm with the court reviewing the file prior to trial, bringing the missing witness and exhibit lists to the parties' attention, and asking if anyone was going to make an issue about it."

scheduling order. They further argued that no exception to compliance with the scheduling order existed which would excuse Thornhill from compliance with the scheduling order. In support, Commonwealth Eye reasoned that "any time that one party faithfully complies with a scheduling order and the other party does not, but that party is allowed to proceed notwithstanding that violation, the party who does obey the order is prejudiced thereby." Commonwealth Eye also contended that the listed exceptions in section V of the scheduling order do not "address a failure to file the exhibit and witness lists," because section V only permits the court to consider "an omission," of certain witnesses and exhibits from a timely filed list and not a "failure to file" the exhibit and witness list in its entirety. Commonwealth Eye also asserted that Thornhill had neither requested leave to file a late witness and exhibit list nor had he shown good cause for why the pleadings were being filed late. Commonwealth Eye further argued that Thornhill had also failed to move to modify the filing deadlines as he was permitted to do in section XII of the scheduling order. Finally, Commonwealth Eye contended that Thornhill's failure to timely file a witness and exhibit list was "part of a pattern of the plaintiff in this case of violating the Rules of the Supreme Court of Virginia and the orders of this Court."

Thornhill responded that this was "an important issue for the Court to decide, so I'm not asking for the Court to delay making a decision." Thornhill argued that although the exhibit list had been sent previously to Commonwealth Eye, "there was an inadvertent failure to file the witness and exhibit list with the Court." Thornhill stated that he "strongly disagree[d]" that "somehow the rest of [section] V in the pretrial scheduling order concerning exhibit and witness lists somehow doesn't apply to the filing requirement." In response, Commonwealth Eye noted again that at no point during his argument did Thornhill ask the Court to modify or waive the filing deadlines or state good cause why that should be done as permitted in section XII of the

scheduling order. The hearing concluded at 10:30 a.m., and the matter was taken under advisement.

Finally, at 11:37 a.m., Thornhill filed his list of witnesses and exhibits with the circuit court, however the circuit court subsequently issued a letter opinion denying Thornhill the ability "to introduce any evidence or witnesses" later that afternoon. The letter opinion further granted Commonwealth Eye's motion for summary judgment and released the jury venire from attendance at the trial, which was set to begin the following Monday. In addition, the circuit court noted that "the court will be available for counsel, if they choose, to appear in the Culpeper County Circuit Court on Monday at 9:30 a.m. to proffer and place anything on the record."

On the following Monday, the circuit court announced that it had previously granted summary judgment for Commonwealth Eye but wanted "to let everybody put on the record whatever they would like to put on the record today before the court enters that order." Thornhill proffered that the case had previously been nonsuited and that discovery from that nonsuited case had been incorporated into the present case. He further noted that four witnesses that Commonwealth Eye had objected to were properly before the court as a result of the nonsuit.[3] Thornhill clarified that the emails exchanged between counsel and the circuit court would be made a part of the record, and then stated that he had "nothing further for the record." Thornhill appealed.

---

[3] The record is bereft of any exhibit list or witness list that had been previously filed with the trial court in the previously nonsuited case.

## II. ANALYSIS

A. *Thornhill's assignments of error pertaining to the circuit court's interpretation of the order are reviewed for an abuse of discretion.*

The parties disagree, in part, regarding the remaining standard of review applicable in this case to the circuit court's interpretation of the scheduling order. Thornhill argues that de novo review is appropriate because the scheduling order utilized in this case is the Uniform Pretrial Scheduling Order located in the Appendix of Forms of the Supreme Court of Virginia. Commonwealth Eye contends that an abuse of discretion standard is appropriate because the circuit court is simply interpreting its own order in this case. We agree with Commonwealth Eye.[4]

The circuit court "generally exercises 'broad discretion' in resolving such matters" as discovery issues and abuses, scheduling and docket control decisions, and decisions pertaining to the admissibility of evidence. *Am. Safety Cas. Ins. Co. v. C.G. Mitchell Constr.*, 268 Va. 340, 351 (2004) (quoting *Woodbury v. Courtney*, 239 Va. 651, 654 (1990)) (addressing discovery issues); *Rakes v. Fulcher*, 210 Va. 542, 546 (1970) (same); *Bennett v. Commonwealth*, 236 Va. 448, 461 (1988) ("No doubt continuances in the midst of trial should not be an everyday occurrence. Nevertheless, such decisions are entrusted to the sound discretion of the trial court."); *Bista v. Commonwealth*, 78 Va. App. 391, 412 (2023) (en banc) ("Appellate courts 'review a trial court's decision to admit or exclude evidence using an abuse of discretion standard'" (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021))). Consistent with this authority, our Supreme Court applies an abuse of discretion standard on appeal when reviewing a circuit court's interpretation

---

[4] Thornhill acknowledges that abuse of discretion review is proper "[t]o the extent that the court's decision here was driven by its consideration and balancing of different factors within the framework of the Scheduling Order." Thornhill also concedes that while the "debate" on the appropriate standard of review is "interesting, it ultimately should not be determinative."

of an entered scheduling order.[5] *Galloway v. Cnty. of Northampton*, 299 Va. 558, 564 (2021) (interpreting scheduling order in the context of sanctions under Rule 4:12(b)(2)); *Mikhaylov v. Sales*, 291 Va. 349, 358-59 (2016) (interpreting "the Uniform Pretrial Scheduling Order," and appearing to apply an abuse of discretion standard by referring to the duty of deciding whether nondisclosed expert witness opinions should be excluded as "discretionary"). And this Court has reached the same conclusion as well. *Reaves v. Tucker*, 67 Va. App. 719, 736 (2017) (applying abuse of discretion standard); *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006) (applying abuse of discretion standard). Therefore, upon reviewing the record and precedent before us here, we agree with Commonwealth Eye that the abuse of discretion standard applies here.

We apply the abuse of discretion standard of review here for three reasons. First, our Court and the Supreme Court of Virginia, when interpreting similar language in scheduling orders, have consistently used an abuse of discretion standard when questions involving the circuit court judge's discretion are raised on appeal. *See, e.g.*, *Galloway*, 299 Va. at 564; *Reaves*, 67 Va. App. at 736; *Rahnema*, 47 Va. App. at 658.[6] Second, section XII of the scheduling order permits the circuit court, upon motion, to modify or waive provisions within the order. Thus, the presence of section XII supports an inference that such orders are administered at the circuit court's discretion, justifying the application of appropriate appellate deference to the circuit

---

[5] Based upon the doctrine of stare decisis, we apply an abuse of discretion standard as a part of the ratio decidendi of these decisions. *See, e.g.*, *Commonwealth v. Holland*, ___ Va. ___, ___ n.6 (Jan. 16, 2025) ("*Stare decisis* 'applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment.' 'In other words, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.'" (quoting *Womack v. Commonwealth*, 82 Va. App. 289, 303 (2024))).

[6] Recent unpublished cases have also applied the same standard of review. *See Hunter v. Hunter*, No. 1237-22-1 (Va. Ct. App. Oct. 31, 2023); *Daniel v. Daniel*, No. 1189-19-4 (Va. Ct. App. Mar. 31, 2020); *Clements v. Med. Facilities of Am., Inc.*, No. 1060-23-3 (Va. Ct. App. Aug. 27, 2024); *Murphy v. Olive*, No. 0865-23-2 (Va. Ct. App. Aug. 20, 2024).

court's decision.[7] *Am. Safety Cas.*, 268 Va. at 351; *Rakes*, 210 Va. at 546; *Bennett*, 236 Va. at 461; *Bista*, 78 Va. App. at 412. And finally, the cases cited by Thornhill do not demand a contrary result. *See, e.g.*, *Mikhaylov*, 291 Va. at 359; *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 533-35 (2017) (explicitly applying abuse of discretion review). Therefore, we review the circuit court's interpretation of its own scheduling order for an abuse of discretion.

"An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764 (2014) (internal quotation marks omitted). The abuse of discretion standard therefore "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013). We, however, review the circuit court's eventual grant of summary judgment de novo. *Ricketts v. Strange*, 293 Va. 101, 106 (2017).

B. *The circuit court did not abuse its discretion in holding that Thornhill's failure to file his list of exhibits and witnesses with the circuit court did not fall within the exceptions listed in the circuit court's scheduling order.*

Thornhill contends that the circuit court erred when it concluded that his late filings did not fall within the "safe harbor" provision of "the Uniform Pretrial Scheduling Order" because he had timely served Commonwealth Eye with his witness and exhibits list. We disagree.

"In any civil case the parties, by counsel of record, may agree and submit for approval and entry by the court a pretrial scheduling order." Rule 1:18(a). Where "a pretrial scheduling order has not otherwise been entered pursuant to the court's normal scheduling procedure, the court may, upon request of counsel of record for any party, or in its own discretion, enter the

---

[7] The scheduling order contains many similar provisions, including but not limited to language confirming that the "time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown."

- 9 -

pretrial scheduling order contained in Section 3 of the Appendix of Forms at the end of Part I of these Rules (Uniform Pretrial Scheduling Order)."[8] Rule 1:18(b).

We have previously noted that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases, . . . they must be enforced by the trial courts." *Reaves*, 67 Va. App. at 732. "Once the Court has entered a scheduling order, the liberal policy favoring amendments no longer applies . . . [and] any modification must be based on a showing of good cause." *Id.* (alterations in original). "There is little point in issuing such orders if they amount to nothing more than a juristic bluff, obeyed faithfully by conscientious litigants, but ignored at will by those willing to run the risk of unpredictable enforcement." *Rahnema*, 47 Va. App. at 658. "The impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and trial courts alike." *Id.*

"[T]rial courts have the authority to interpret their own orders." *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (alteration in original). "This Court 'defer[s] to the trial court's interpretation of its own order.'" *Id.* (alteration in original) (quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002)). "That interpretation, however, must be reasonable." *Id.* (internal quotation marks omitted). This reasonableness determination must come from a straightforward and plain reading of the order, *Roe v. Commonwealth*, 271 Va. 453 (2006), and the order must be considered "within its four corners," *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002). "[T]he trial court's interpretive discretion 'must be exercised reasonably and not arbitrarily or

---

[8] Thornhill does not assert on brief that Rule 1:18(c) impacts our analysis, did not argue that Rule 1:18(c) applied before the trial court, and does not assign error to the circuit court for failing to apply it. Thus, we do not address its application to the facts at bar, only in response to the dissent. *See, e.g.*, *Dudley v. Estate Life Ins. Co. of Am.*, 220 Va. 343, 348 (1979) ("Elementary is the rule of appellate procedure that the scope of the argument on appeal is limited by the assignments of error."); *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

capriciously.'" *Roe*, 45 Va. App. at 245 (quoting *Smoot*, 37 Va. App. at 500).[9] This Court presumes that the circuit court applied the law correctly to the facts. *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995).

Here, Thornhill contends that the circuit court erred when it failed to grant him a section V exception to the filing requirements contained within the Uniform Pretrial Scheduling Order entered in this case. He asserts that he should have been granted an exception because he timely sent his exhibit and witness lists to Commonwealth Eye. He further asserts that, as a result, Commonwealth Eye suffered no surprise or prejudice based upon the late filing of the pleadings in the circuit court.[10] Commonwealth Eye responds by acknowledging that although it was not surprised or prejudiced by the failure to file the pleadings in the circuit court, the failure to timely file the list of exhibits and witnesses in its entirety with the circuit court removes Thornhill's situation from the permitted exceptions in section V of the scheduling order. Commonwealth Eye further contends that section V of the scheduling order only applies to the omission of specific witnesses or exhibits from a timely filed list of all the proposed witnesses and exhibits. Thus, Commonwealth Eye contends that the circuit court did not abuse its discretion in denying the section V exception advocated by Thornhill based upon the court's finding that "failure to list" as enunciated in the scheduling order does not extend to the situation here where Thornhill "fail[ed] to file" the list of exhibits and witnesses with the circuit court. We agree with Commonwealth Eye.

---

[9] Our Supreme Court has emphasized the importance of neutrality and impartiality when interpreting and applying procedural rules, even under an abuse of discretion standard. *See Umana-Barrera v. Commonwealth*, No. 141122, slip op. at 15, 2015 Va. Unpub. LEXIS 15, at *19-20 (Aug. 21, 2015) (Kelsey, J., concurring in the result) (order) ("Truly neutral procedural rules allow courts to set limits and mark off boundaries without regard to which side stands to gain or lose.").

[10] The parties use the term "safe harbor" to refer to this exception.

The pertinent language from the scheduling order states that

> Counsel of record shall exchange fifteen (15) days before trial a list specifically identifying each exhibit to be introduced at trial, copies of any exhibits not previously supplied in discovery, and a list of witnesses proposed to be introduced at trial. The lists of exhibits and witnesses shall be filed with the Clerk of the Court simultaneously therewith but the exhibits shall not then be filed. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the *failure to list the exhibit or witness* was through inadvertence.

(Emphasis added). Here, the circuit court interpreted the permitted exception to the filing requirement to extend only to those items which were omitted from a timely filed exhibit and witness list. In doing so, the court determined that failing to *file* and failing to *list* were two distinct and different terms with two separate and distinct meanings. Hence, in support of barring Thornhill's witnesses and exhibits in his case in chief, the circuit court reasoned that it was "bound by the plain meaning of the order" and could not "add or subtract language from it." Thornhill fails to raise any evidence contrary to the circuit court's interpretation of its own order.

Here, the circuit court applied a common, straightforward, and well-recognized principle of interpretation in reaching its conclusion that Thornhill's inadvertent failure to file the required pleadings in the circuit court did not fall within any permitted exception in section V of the scheduling order. Thus, since an abuse of discretion can occur only when no reasonable jurist could have come to the same conclusion, we find that the circuit court did not abuse its discretion.

C. *The circuit court did not abuse its discretion in precluding Thornhill from introducing any exhibits or calling any witnesses during his case in chief because Thornhill failed to comply with the scheduling order.*

Thornhill next assigns error to the circuit court's decision to bar him from presenting evidence at trial as a result of his failure to comply with the scheduling order. Thornhill asserts that the circuit court's decision was not supported by the record. We disagree.

As recently affirmed by the Supreme Court of Virginia, "trial court[s] [have] *presumptive authority* to prohibit a party in material breach of an order regulating discovery from 'introducing designated matters in evidence.'" *Galloway*, 299 Va. at 564 (emphasis added) (quoting *Mikhaylov*, 291 Va. at 358-59). In *Galloway,* the Supreme Court was faced with a trial court's decision to bar an untimely disclosed expert from testifying at trial. *Id.* The appellants had "failed to provide the information [relating to the expert] required by Rule 4:1(b)(4)(A)(i), incorporated into the [uniform Pre Trial Scheduling Order (PTSO)], until two months later, [than the stated deadline]." *Id.* And "[t]he PTSO specifically warned that if a party failed to comply with the requirements of the PTSO, the party would 'ordinarily not be permitted' to use the undisclosed expert opinion at trial." *Id.* The appellants sought to excuse this failure, arguing that even though there was a delay in disclosing the expert, they should not be held to the terms of the PTSO because "it was not entered by the court until January 16, 2019, the same day they were required to disclose the identity of their experts and the substance of the experts' facts and opinions" and that "because they offered the defendants the opportunity to depose [the expert in question], they should not be penalized for neglecting to provide the details required by Rule 4:1(b)(4)(A)(i)." *Id.*

The Supreme Court of Virginia disagreed and affirmed the trial court, reasoning that "a party is not relieved from its disclosure obligation under [Rule 4:1(b)(4)(A)(i)] simply because the other party has some familiarity with the expert witness or the opportunity to depose the

expert." *Id.* at 565 (alteration in original) (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 592 (2007)). In addition, the Supreme Court further found that the

> trial court did not abuse its discretion by excluding [the expert in question] from testifying at trial . . . [as] "[t]o hold otherwise would reduce the expert disclosure obligation to the status of a mere recommendation or, worse, a juristic bluff—obeyed faithfully by conscientious litigants but ignored at will by those willing to run the risk of unpredictable enforcement."

*Id.* (quoting *Mikhaylov*, 291 Va. at 360).

Here, since Thornhill failed to timely file a list of exhibits or witnesses as required by the scheduling order, the circuit court did not abuse its discretion in barring the introduction of evidence on his behalf. The requirement to timely file a list of exhibits or witnesses on or before 15 days prior to trial was expressly addressed in the scheduling order. The scheduling order specifically provided that "[a]ny exhibit or witness not so identified and filed will not be received in evidence." Since the circuit court had not received any timely filed list of exhibits or witnesses as required by the scheduling order, the circuit court did not abuse its discretion when barring Thornhill from presenting any evidence.[11]

Thornhill's contention that because Commonwealth Eye was aware of the contents of the untimely filed lists and therefore not prejudiced is also misguided. Similar to *Galloway*, where the Supreme Court found it within the circuit court's discretion to bar the testimony of an untimely "identified and filed" expert, we find the circuit court was within its discretion to exclude the testimony of *all* of Thornhill's untimely filed experts and any related exhibits due to his failure to comply with the scheduling order as "[t]o hold otherwise would reduce the . . .

---

[11] Thornhill argues that disposing of cases without hearing the merits of the matter is disfavored in Virginia. Thornhill first raises this argument in his reply brief, so we therefore do not consider it. *Palmer v. Atlantic Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that argument raised for the first time in reply brief was waived); *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief or at oral argument).

obligation[s] [provided in such orders] to the status of a mere recommendation." *Galloway*, 299

Va. at 565 (quoting *Mikhaylov*, 291 Va. at 360). Hence, the circuit court did not abuse its

discretion by barring Thornhill from calling his proposed experts to testify or by barring the

introduction of his untimely filed exhibits.

> D. *Since the circuit court did not abuse its discretion in excluding Thornhill's proposed exhibits and witnesses, the circuit court did not err in subsequently granting Commonwealth Eye's motion for summary judgment.*

Finally, Thornhill assigns error to the circuit court for granting Commonwealth Eye's

subsequent motion for summary judgment and thereafter dismissing his complaint with

prejudice, which Thornhill asserts was "simply uncalled for."[12] We disagree.

A trial court may appropriately grant summary judgment only in cases in which no

material facts are genuinely in dispute. *See Thurmond v. Prince William Pro. Baseball Club,

Inc.*, 265 Va. 59, 64 (2003). Moreover, "the decision to grant a motion for summary judgment is

a drastic remedy." *Turner v. Lotts*, 244 Va. 554, 556 (1992). When used appropriately, part of

the purpose of summary judgment is to "'bring litigation to an end at an early stage' thereby

saving litigants from the costs of an unnecessary trial on a meritless claim." *AlBritton v.

Commonwealth*, 299 Va. 392, 405 (2021) (quoting *Carson ex rel. Meredith v. LeBlanc*, 245 Va.

135, 140 (1993)).[13]

---

[12] The circuit court found that Thornhill's failure to comply with the scheduling order barred him from calling any witnesses or presenting any evidence during his case in chief. As a result, we also find that the circuit court did not err by subsequently granting Commonwealth Eye's motion for summary judgment. Hence, we decline to reach Thornhill's assignment of error as to his initial objection which is subsumed within our affirmance of the grant of summary judgment. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (noting that judicial restraint requires cases to be resolved on the "best and narrowest grounds").

[13] Although Thornhill stated to the circuit court that Commonwealth Eye's motion should have been styled as a "motion to strike witnesses or exhibits" and that summary judgment should have been "another step," he does not assign error to this question on appeal and accordingly, we do not address it. *See* Rule 5A:18.

Here, Thornhill failed to comply with the scheduling order which required him to file a list of proposed exhibits and a list of proposed witnesses in the circuit court on or before 15 days before trial. As a result of his failure to timely file the pleadings, the circuit court ruled that any and all of Thornhill's evidence to be presented through his proposed witnesses and proposed exhibits was inadmissible during Thornhill's case in chief. Accordingly, since Thornhill was prohibited from presenting any evidence during his case in chief, there were no material facts in dispute sufficient to overcome Commonwealth Eye's denial of negligence. Thus, the circuit court did not err by granting Commonwealth Eye's motion for summary judgment.

Although Thornhill now laments the granting of summary judgment, he offers no countervailing theory of relief that the court could have considered, other than simply denying Commonwealth Eye's motion for summary judgment. For example, Thornhill failed to move for a continuance, failed to move the circuit court to amend the scheduling order, and failed to nonsuit his case.[14] He now contends on appeal that he was not required to offer the circuit court a viable alternative to granting the motion for summary judgment because the granting of Commonwealth Eye's motion for summary judgment was "simply uncalled for." Thornhill rationalizes his failure to employ his potential available remedies contained in section XII of the scheduling order by contending that "there was otherwise no reason" to "even consider a continuance" because a continuance "would not have addressed or alleviated any of the concerns raised by the defense or the court." We find his contention unavailing since the granting of a motion for continuance of only 15 days from the date of Thornhill's initial late filing could have cured his lack of compliance with the scheduling order. Additionally—and perhaps most significantly for purposes of this appeal—Thornhill contends that there was "no need" to invoke

---

[14] Although a voluntary nonsuit had previously been entered, Thornhill could have sought consent from the circuit court to enter a second nonsuit. *See* Code § 8.01-380.

the modification or waiver provisions of the scheduling order in section XII, because in his view there was already a "specific provision" that "addresses this scenario." Curiously, however, Thornhill fails to contend that he could not have sought relief based upon the plain meaning of section XII, which states in pertinent part that "[u]pon motion, the time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown." *See Reaves*, 67 Va. App. at 134 (defining good cause simply as "the burden placed on a litigant (usually by court rule or order) to show why a request should be granted or an action excused"). Hence, Thornhill chose to forego invoking a provision in the scheduling order that recognizes the plenary power of the circuit court to modify or waive the very scheduling deadline affecting his ability to call witnesses and introduce evidence. Instead, he chose to rely upon a narrow provision which he now contends was the more appropriate relief. Moreover, the record reflects that Thornhill had multiple opportunities to attempt to avoid summary judgment by claiming good cause to invoke the remedies provided for in section XII of the scheduling order. Instead, Thornhill decided not to provide the circuit court with an alternative course of action even after the circuit court preemptively indicated how it might rule on his ill-fated interpretation of section V of the scheduling order. Thus, presented with no admissible evidence permitted as a result of Thornhill's noncompliance with the scheduling order as well as no attempt to continue the trial or modify the scheduling order, we cannot find that the circuit court abused its discretion and erred by granting Commonwealth Eye's motion for summary judgment.

III. CONCLUSION

The circuit court did not abuse its discretion by interpreting its scheduling order to bar Thornhill from introducing any evidence during his case in chief given his failure to timely file with the court a list of exhibits or witnesses in a multi-day medical malpractice jury trial. Nor did the circuit court abuse its discretion by excluding Thornhill's witnesses and exhibits

identified and listed on his untimely filed list of exhibits and witnesses.  In addition, the circuit

court did not err in granting summary judgment when Thornhill failed to request the relief

available to him in section XII of scheduling order, including his failure to move for a

continuance of the trial, failure to move to amend or waive compliance with the scheduling

order, or failure to move to nonsuit his case.  Thus, we affirm the judgment of the circuit court.

*Affirmed.*

Callins, J., dissenting.

I agree with the effect of my esteemed colleagues' conclusion regarding summary judgment. Where the moving party fails to present evidence—witnesses and exhibits—to support his cause of action, summary judgment is warranted. If there is no cause, there is no case. And there can be no cause without evidence to support it. However, the sanction for partial noncompliance with a pretrial scheduling order is not to strike the moving party's case, and on that basis, dismiss the case on summary judgment. This is a "drastic remedy" not at all tailored to address the extent of the offense. Yet this is exactly what occurred here. And because I believe the trial court erred in imposing this drastic sanction, I respectfully dissent.

I. Standard of Review

As an initial matter, I take a different position from my colleagues regarding the applicable standard of review. The majority rightly identifies the scheduling order at issue here as the Uniform Pretrial Scheduling Order. This uniform order is found "in the Appendix of Forms at the end of Part I of [the Rules of the Supreme Court of Virginia]." Rule 1:18(b). Notably, Rule 1:18(b) provides that, in a civil case, a trial court "may, upon request of counsel . . . or in its own discretion, enter the [Uniform Pretrial Scheduling Order]." Indeed, Rule 1:18(b) suggests that entry of the Uniform Pretrial Scheduling Order is a matter of discretion, signified by the use of the word "may." *Bd. of Supervisors v. State Corp. Comm'n*, 292 Va. 444, 454 (2016) ("[I]n construing statutes this Court 'will apply the ordinary meaning of the word "may,"' which is 'permission, importing discretion' where, as here, no 'contrary legislative intention plainly appears." (quoting *Sauder v. Ferguson*, 289 Va. 449, 457 (2015))). Despite this grant of discretion, however, Rule 1:18(c) makes plain that

> [w]ith the exception of domestic relations and eminent domain cases, a court *may not* enter a scheduling order which deviates from the terms of the Uniform Pretrial Scheduling Order unless either (1) counsel of record for all parties agree to different

- 19 -

> provisions, or (2) the court, after providing an opportunity for counsel of record to be heard, makes a finding that the [Uniform Pretrial Scheduling Order] is not consistent with the efficient and orderly administration of justice under the specific circumstances of that case.

(Emphasis added). If Rule 1:18(b)'s use of the word "may," on its own, signifies the grant of discretion, then Rule 1:18(c)'s use of the word "may" followed by the word "not" signifies the *absence* of discretion. Put differently, while Rule 1:18(b) permits the circuit courts to enter a scheduling order, Rule 1:18(c) explicitly requires the entry of the Uniform Pretrial Scheduling Order—if a scheduling order is to be entered—in all civil cases except those sounding in domestic relations and eminent domain and absent the invocation of certain enumerated exceptions.

Because, in many cases, the Uniform Pretrial Scheduling Order is entered in lieu of a court- or party-drafted scheduling order as a matter of heeding the Supreme Court of Virginia's mandate, I would conclude that its terms should be construed as an extension of the Rules. Thus, while my colleagues conclude that we must review the trial court's interpretation of the Uniform Pretrial Scheduling Order for an abuse of discretion, I would conclude that we must review the same de novo. *Compare Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (noting that this Court "defer[s] to the trial court's interpretation of its own order," but that its "interpretation . . . must be reasonable, and [this Court] will 'apply an abuse of discretion standard'" (first quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002) (alteration in original); and then quoting *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015) (second alteration in original)), *with LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012) ("A lower court's interpretation of the Rules of this Court, like its interpretation of a statute, presents a question of law that we review *de novo*.").

II. De Novo

Assuming this Court should apply a de novo standard of review, I conclude that the trial court acted ultra vires by interpreting the provisions of the Uniform Pretrial Scheduling Order so as to permit the dismissal of Thornhill's case.

Code § 17.1-503(A) provides that the Supreme Court of Virginia "may formulate rules of practice and procedure for the circuit courts," with the limitation that such rules are "subject to the *strict* construction of the provisions of [Code] § 8.01-4." (Emphasis added). Meanwhile, Code § 8.01-4 provides that rules promulgated to govern the practice and procedure for circuit courts "shall be limited to those rules necessary to promote proper order and decorum and the efficient and safe use of courthouse facilities and clerks' offices" and that:

> No rule of any such court shall be prescribed or enforced which is
> inconsistent with this statute or any other statutory provision, or
> the Rules of [the] Supreme Court or contrary to the decided cases,
> or which has the effect of *abridging substantive rights* of persons
> before such court. Any rule of court which violates the provisions
> of this section shall be invalid.

(Emphasis added). There is nothing more that a court can do to abridge the substantive rights of a party than to dismiss their cause of action altogether. *See Shiflet v. Eller*,[15] 228 Va. 115, 120 (1984) ("Substantive rights . . . are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights.") (discussing "substantive" versus "procedural" rights in the context of the retroactive application of statutes). By dismissing a party's case altogether, a circuit court inherently abridges that party's substantive rights by denying them even the opportunity to furnish proof in support of their cause of action. To this

---

[15] "[O]ur precedent demonstrates that the type of duties, rights, and obligations *Shiflet* referred to are those that relate to causes of action, rights of recovery, contracts, real property interests, and the nature of what is criminal." *Montgomery v. Commonwealth*, 75 Va. App. 182, 206 (2022) (Lorish, J., dissenting).

end, Code § 8.01-4 explicitly provides that "[n]o civil matter shall be dismissed with prejudice by any . . . circuit court for failure to comply with any rule created under this section."

My colleagues in the majority rely on *Reaves v. Tucker*, 67 Va. App. 719 (2017), for the proposition that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases, however, they must be enforced by the trial courts." *Id.* at 732. In that case, a litigant argued that a trial court erred by enforcing the Uniform Pretrial Scheduling Order by (1) denying her motion to extend pretrial deadlines, (2) denying a continuance request on the day of trial, and (3) barring the litigant from presenting any exhibits or witness that had not been identified at least 15 days before trial. *Id.* at 733-37. This Court found no error in the trial court's actions where the litigant was not denied the opportunity to participate in the adjudication of the matter despite being required to adhere to the terms of the scheduling order. *Id.*

In *Reaves* we stressed that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases . . . they must be enforced by the trial courts." *Id.* at 732. Even so, we explicitly recognized that the Uniform Pretrial Scheduling Order is a "docket control procedure" subject to the limitations set forth by Code § 8.01-4. *Id.* Had the trial court in the present case merely enforced the Uniform Pretrial Scheduling Order's prohibition on the introduction of exhibits or witnesses not properly "identified and filed," while still permitting their introduction "in rebuttal or for impeachment," as did the court in *Reaves*, the trial court would not have erred. *See* Rule 1:18(b). Further, on de novo review, Rule 1:18(b)—the Uniform Pretrial Scheduling Order—explicitly provides that any such prohibition would be inapplicable in a case where an exhibit or witness was not properly listed through inadvertence. The facts of the present case clearly show that the exhibit and witness list was properly provided to opposing counsel; Thornhill's only failure was in *inadvertently* failing to file the same with the trial court. In any event, the trial court could not have permissibly enforced the provisions of the Uniform

- 22 -

Pretrial Scheduling Order by dismissing Thornhill's case. Indeed, in doing so, the trial court abridged Thornhill's substantive rights and denied him the opportunity to seek the vindication of his rights.

III. Abuse of Discretion

Even assuming, however, that the applicable standard of review is abuse of discretion, I conclude that the trial court erred.

My colleagues in the majority heavily rely on *Galloway v. County of Northampton*, 299 Va. 558 (2021), to support their conclusion that the "circuit court did not abuse its discretion by barring Thornhill from [introducing] his proposed experts [and evidence]." As they note, in *Galloway* our Supreme Court found no error where a trial court excluded an expert from testifying at trial where the party offering the expert failed to disclose information required by Rule 4:1(b)(4)(A)(i). *Galloway*, 299 Va. at 564-65. There, the Supreme Court reiterated that a trial court retains "presumptive authority to prohibit a party in a material breach of an order regulating discovery from 'introducing designated matters in evidence.'" *Id.* at 564 (quoting *Mikhaylov v. Sales*, 291 Va. 349, 358-59 (2016)). A material breach occurs when a party fails to do something "so fundamental" to the Uniform Pretrial Scheduling Order that "the failure to perform that obligation defeats an essential purpose" of the scheduling order. *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 732 (2012) (quoting *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001)) (discussing the doctrine of first material breach in the context of contracts).

Here, Thornhill's failure to file the witness and exhibit list with the trial court—despite having provided the same to opposing counsel—cannot be said to have placed Thornhill in material breach of the Uniform Pretrial Scheduling Order. The plain language of the scheduling order makes clear that its essential purposes are to guard against unfair "surprise" or "prejudice" and that its terms should not be construed so as to punish the inadvertent failure to comply with a

technical requirement of its terms. Rule 1:18(b). By providing the witness and exhibit list to opposing counsel, Thornhill satisfied these essential purposes. Thus, the trial court did not dismiss his case altogether with the "presumptive authority to prohibit a party in a material breach of an order regulating discovery from 'introducing designated matters in evidence,'" as the rationale of my colleagues in the majority might suggest. *Galloway*, 299 Va. at 564.

Absent any authority by statute or under the Rules, only under its contempt powers could the trial court have stricken Thornhill's evidence as a matter of enforcing the Uniform Pretrial Scheduling Order. "A court may find a party in contempt for 'disobedience or resistance . . . to any lawful process, judgment, decree or order of the court.'" *Epperly v. Cnty. of Montgomery*, 46 Va. App. 546, 552 (2005) (alteration in original) (quoting Code § 18.2-456(5)). "On appeal, '[a]n adjudication of contempt will be reversed "only if we find that the court abused its discretion."'" *Id.* at 552-53 (alteration in original) (quoting *Estate of Hackler v. Hackler*, 44 Va. App. 51, 64-65 (2004)). Sanctions for contempt for "misconduct tangentially related to the underlying suit" must be "narrowly tailored to correct" the contemptuous conduct at issue. *Winters v. Winters*, 73 Va. App. 581, 593 (2021). "As a standard . . . 'the imposition of a particular sanction must be sufficient to deter [the offending] practices,' and the imposition of the sanction requires the exercise of judicial discretion." *Id.* (second alteration in original). Thus, in *Winters*, this Court held that where a father in a custody proceeding violated a court order prohibiting him from disclosing the contents of a court-ordered psychological evaluation to the minor children's stepmother, dismissal of his custody suit was nonetheless an inappropriate sanction and an abuse of discretion. *Id.* at 590-94.

Our Court's decision in *Ange v. York/Poquoson Department of Social Services.*, 37 Va. App. 615 (2002), is a useful comparator. In that case, the mother of four children in a termination of parental rights case engaged in a series of behaviors in defiance of the trial court's

Uniform Pretrial Scheduling Order. *Ange*, 37 Va. App. at 618-22. To wit, the mother acted in contempt of the scheduling order by failing to file certain "best interest" proffers with the trial court after the trial court, sua sponte, extended the deadline multiple times; even when the mother did file the proffers, they were only "partially completed." *Id.* at 618-20. She further only "partially completed" a home study required by the scheduling order and failed to respond to communications sent by the Department of Social Services in pursuit of reunification efforts. *Id.* at 620-21. The mother likewise did not appear at a number of scheduled meetings with the Department. *Id.* at 621. Upon notification from the Department of the foregoing, the trial court found that the mother "had 'not substantially complied with any of' its pretrial orders concerning the preparation of the case for trial." *Id.* The trial court "sanction[ed] [the mother] for her noncompliance by summarily resolving the four cases involving [the mother's] children without benefit of a hearing on the merits." *Id.*

On appeal, we reversed the judgment of the trial court in so sanctioning the mother. *Id.* at 632. We observed that "[l]ess drastic sanctions would have served the same purpose of punishing [the mother] for her noncompliance, without short-circuiting these significant legal proceedings." *Id.* Even in sanctioning a party in contempt of a court order, we emphasized that "[s]uch drastic measures that summarily terminate the legal process are generally not favored and are to be avoided when possible." *Id.* at 629. Based on the "nature of th[e] case, the severity of the sanction imposed, [the mother's] partial compliance with the trial court's orders, and the need to protect [the mother's] rights," we found that the "trial court clearly abused its discretion." *Id.* at 632.

Here, Thornhill more than partially complied with the trial court's orders—his only failure with regard to the witness and exhibit list took the form of his failure to file the list with the trial court itself. Otherwise, Thornhill provided all notice due under the Uniform Pretrial

Scheduling Order to the party for whom it mattered most, his opposing counsel. Thornhill's noncompliance was markedly less significant than that of the mother in *Ange*, where the mother failed to comply with virtually any of the requirements contained in the scheduling order. By resorting to the drastic sanction of striking Thornhill's entire case and granting summary judgment against him, the trial court's actions were well out of proportion with the conduct it sought to police. Put differently, the trial court's actions were not "narrowly tailored to correct the problem presented." *Winters*, 73 Va. App. at 593.

"We must be mindful . . . that, although we 'accord deference to the decision of the trial court,' we 'should not simply rubber stamp every discretionary decision of a trial court.'"[16] *Ange*, 37 Va. App. at 624 (quoting *Walsh v. Bennett*, 260 Va. 171, 175 (2000)). "[I]n assessing the propriety of the imposition of a particular sanction, we may also take into account the context in which the sanction was imposed and any policy considerations that might be pertinent to the imposition of that sanction.'" *Id.* at 625. In this case, my colleagues in the majority may unintentionally give license to trial judges to impose sanctions on individuals who fail to comply with the minutiae of a Uniform Pretrial Scheduling Order in magnitudes well out of proportion to the conduct at issue. I decline to rubber stamp such conduct at the expense of depriving litigants of their day in court.

Therefore, I respectfully dissent.

---

[16] As members of the judiciary, we are tasked with an imperative to act impartially, and to avoid placing a finger on the scales of justice in favor of one party over another. By inviting Commonwealth Eye Center to file a motion to strike and for summary judgment—a course of action that had not been contemplated by Commonwealth Eye Center—the trial judge in this matter did exactly that. This is conduct which should not be condoned as a matter of discretion.